IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

| | | |
|---|---|---|
| JANE DOE<br>3700 Toone Street<br>Baltimore, Maryland 21224 | * | |
| Plaintiff, | * | |
| v. | * | Case No.: |
| OFFICE OF THE PUBLIC DEFENDER OF MARYLAND<br>6 St. Paul Street<br>Suite 1400<br>Baltimore, Md 21202<br>Serve:<br>   Natasha Dartique<br>   Public Defender<br>   6 St. Paul Street<br>   Suite 1400<br>   Baltimore, Md 21202 | * | C-15-CV-25-000307 |
| and | * | |
| NATASHA DARTIQUE<br>Public Defender<br>6 St. Paul Street<br>Suite 1400<br>Baltimore, Md 21202 | * | |
| Defendants. | * | |

........................................................................

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe, by her undersigned counsel, hereby files suit against The Office of the Public Defender and Natasha Dartique for claims as set forth below.

PARTIES AND JURISDICTION

1. Plaintiff Jane Doe is an adult resident of the State of Maryland.

2. Defendant The Office of the Public Defender ("OPD") is an entity formed under the laws of the State of Maryland in the Executive Branch of state government. At all times materials to this Complaint, OPD acted under color of state law, policy, or custom.

3. Defendant Natasha Dartique is the appointed head and final decisionmaker of OPD serving as Public Defender under state law, and at all material times acted under color of state law, policy or custom.

4. Defendants habitually engage providing legal services throughout the State of Maryland, including in Montgomery County, Maryland.

## FACTS

5. Plaintiff Doe is a law student in the State of Maryland. Plaintiff is expected to receive her Juris Doctorate in May 2025 and sit for the Maryland Bar in July 2025.

6. From May 2023 until March 18, 2024, Plaintiff worked at OPD. Plaintiff initially served as an unpaid intern through the law school. Given her exceptional service, on October 25, 2024, Plaintiff was hired as a paid contractual law clerk for a term extending through June 30, 2024.

7. At all relevant times, Plaintiff was an extraordinarily dedicated and proficient law clerk. Plaintiff earned favorable reviews, she was never disciplined, and she was advised that based on her capabilities and performance she was on track to accomplish her career goal of being hired as a public defender upon completion of law school and admission to the Maryland Bar.

8. Through her good character and honorable conduct, Plaintiff earned an exemplary reputation for her professionalism and integrity in her law school and in the community.

9. Throughout her tenure at OPD, Plaintiff conducted herself with the utmost propriety, professionalism, and integrity.

10. With no justification or basis in fact whatsoever, on March 18, 2024, Plaintiff was summarily discharged by OPD over a remote videocall and told she was banned from the premises. Plaintiff sought to learn the basis for the adverse action, but OPD refused to provide an explanation and unequivocally said none would be forthcoming. Plaintiff was deprived of any opportunity to address whatever was the alleged basis of her discharge and banishment.

11. Shortly before that March 18, 2024 discharge call, Defendant Dartique called a Dean at plaintiff's law school and falsely told him that plaintiff was fired for stalking a lawyer and posed a potential threat of violence to him and others.

12. Prior to communicating to the Dean that Plaintiff was fired for stalking a lawyer and posed a potential threat of violence, Defendant Dartique performed no investigation whatsoever. Defendant Dartique had never even met or spoken to plaintiff. Defendant Dartique had never even met or spoken to the Dean either.

13. After the phone call from Defendant Dartique, the Dean arranged a meeting with Plaintiff. It was at that meeting that Plaintiff learned that her discharge had been for alleged stalking and being dangerous.

14. In connection with the discharge of Plaintiff, Defendants disseminated to numerous third parties that Plaintiff was dangerous and posed a potential threat of violence. Among others, those false communication were disseminated to OPD and other state employees and security personnel. Defendants also communicated these outrageous falsehoods to courthouse officials and requested to have plaintiff barred from access to courthouse buildings as posing a potential threat of violence to others. Defendants also directed that Plaintiff's photograph be posted in public buildings to be on alert for her as a dangerous person. Defendants also issued communications that led to the potential issuance by the Maryland Capitol Police of a "BOLO" with respect to Plaintiff.

3

15. Further, Defendants caused the dissemination throughout the workforce at the offices of the OPD that Plaintiff was fired because she was dangerous. That led to the spread of Defendants' deliberately made falsehoods throughout Plaintiff's law school community.

16. Defendant Dartique referred to Plaintiff as "a possible shooter."

17. Prior to disseminating those deliberately made false communications, Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a charge, and Defendants failed to ask Plaintiff a single question with respect to those outrageous, highly stigmatizing accusations.

18. On May 23, 2024, Plaintiff notified OPD that it had violated her liberty interest vouchsafed in the Fourteenth Amendment of the United States Constitution and the Maryland Declaration of Rights. Plaintiff asserted that she had a right to a hearing to refute the outrageously false charges and to clear her good name ("the Name Clearing Hearing").

19. Defendant OPD agreed that Plaintiff was entitled to a Name Clearing Hearing.

20. On October 14, 2024, a Name Clearing Hearing was conducted for approximately six hours before The Honorable Patrick L. Woodward, retired Judge of the Maryland Court of Appeals, now the Appellate Court of Maryland. Judge Woodward was selected as the hearing officer by mutual agreement. Plaintiff and OPD both had the opportunity to present documentary evidence, call witnesses, and submit legal argument orally and in written briefing. Witnesses testified under oath.

21. On November 27, 2024, Judge Woodward issued a 15-page Hearing Officer's Decision. Judge Woodward found that: (a) all OPD's allegations against Plaintiff were "baseless," (b) that Plaintiff "did not pose any potential threat of violence and Ms. Dartique's statements to the contrary lacked any credible evidentiary foundation," (c) that Plaintiff "never stalked [an

4

attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (d) OPD "published false information to third parties damaging to [Plaintiff's] reputation." Judge Woodward concluded that "specific relief must be granted to [Plaintiff] to mitigate the damage caused by the OPD to her reputation," and went to detail the specific measures that should be undertaken by OPD to clear Plaintiff's name. See Exhibit 1 (redacted).

22. To date, Defendants have steadfastly refused to provide any of the name-clearing remedies granted Plaintiff, leaving in place to circulate unabated the outrageous falsehoods they generated.

23. Plaintiff has suffered and continues to suffer extreme damage to her reputation and career as a result of Defendants' acts and omissions. The stigma resulting from Defendants' outrageous falsehoods jeopardizes Plaintiff's admission to the Maryland Bar or that of any state or federal court, and forecloses employment and other opportunities.

24. Without the issuance of the name-clearing remedies found necessary by Judge Woodward, the damage to Plaintiff's reputation and career is being compounded and continuing by Defendants.

25. As a result of Defendants' actions, Plaintiff Doe has suffered economic and non-economic damages, including a loss of pay and benefits, harm to her livelihood and reputation, emotional distress, and other damages to be proven at trial.

COUNT I
42 U.S.C. §1983
Fourteenth Amendment

26. Plaintiff Doe incorporates by reference the above allegations.

27. Defendants engaged in activities that violated Plaintiff's rights as protected under the Constitution of the United States. Defendant Dartique undertook these acts in her official capacity.

28. Plaintiff has a protected liberty interest in her reputation.

29. As set forth herein, Defendants deprived Plaintiff of her protected liberty interest in her good name, reputation, honor and integrity. Plaintiff's dismissal was accompanied by charges that threatened damage to her reputation in the community. Prior to publicly disseminating those charges, Defendants gave Plaintiff no opportunity to hear and respond to the charges. In so doing, Defendants imposed on Plaintiff a stigma that forecloses other employment opportunities in violation of her constitutional rights.

30. In refusing to provide Plaintiff the required name-clearing relief, Defendants' harm continues to deprive Plaintiff of her protected liberty interest in her good name, reputation, honor and integrity in violation of her vouchsafed constitutional rights.

31. Defendants provided Plaintiff less process than was due under law by failing to provide timely notice and an opportunity to be heard prior to their dissemination of the highly stigmatizing falsehoods.

32. By refusing to implement the remedies set forth by Judge Woodward in Exhibit 1, Defendants' acts and omissions constitute less process than was due, and their acts and omissions continue to sully Plaintiff's good name and foreclose employment and professional licensure and opportunities. See Exhibit 1.

33. As a direct and proximate result of Defendants' conduct, Plaintiff Doe has suffered economic and non-economic damages, including lost pay and benefits, harm to her livelihood and reputation, emotional distress, and other damages.

WHEREFORE, Plaintiff Doe demands judgment against Defendants, injunctive relief, attorney's fees and expenses, pursuant to 42 U.S.C. §1988, costs, and such other relief as the Court deems just and proper.

COUNT II
Affirmative Injunctive
Preliminary and Permanent Injunctive Relief

34. Plaintiff Doe incorporates by reference the above allegations.

35. Plaintiff demanded a Name Clearing Hearing and defendant OPD agreed that Plaintiff was entitled to a Name Clearing Hearing.

36. On October 14, 2024, a Name Clearing Hearing was conducted before The Honorable Patrick L. Woodward at which both parties had the opportunity to present documentary evidence and call witnesses to testify under oath.

37. On November 27, 2024, in his Hearing Officer's Decision, Judge Woodward found that: (a) all OPD's allegations against plaintiff were "baseless," (b) that Plaintiff "did not pose any potential threat of violence and Ms. Dartique's statements to the contrary lacked any credible evidentiary foundation," (c) that Plaintiff "never stalked [an attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (d) OPD publicized false information that was damaging to [Plaintiff's] reputation. Judge Woodward found that comprehensive name-clearing measures were due and he detailed eleven specific measures that should be undertaken by OPD to clear Plaintiff's name. See Exhibit 1.

38. To date, Defendants have refused to provide any of the name-clearing measures to which Plaintiff is entitled, leaving unremedied and in place to circulate unabated the vicious falsehoods it generated.

39. The benefits to Plaintiff in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court were to grant the requested injunctive relief.

40. Without the injunctive relief, Plaintiff will suffer irreparable harm.

41. Plaintiff has a substantial likelihood of success on the merits of her claims.

42. The public interest is best served by granting the injunction.

43. The Court should dispense with the requirement of a bond with respect to these claims against a state agency and official.

WHEREFORE, Plaintiff Doe requests that:

a. The Court issue an Order granting Plaintiff a preliminary injunction mandating defendants to provide the relief as set forth by Judge Woodward. See Exhibit 1, pp. 13-15.

b. The Court issue an Order granting a permanent injunction mandating Defendants to provide the relief set forth by Judge Woodward. See Exhibit 1, pp. 13-15.

c. Plaintiff be granted her costs; and

d. Plaintiff be granted such other relief as the Court deems just and proper.

## COUNT III
### Writ of Mandamus

44. Plaintiff Doe incorporates by reference the above allegations.

45. Defendants have a clear constitutional legal and non-discretionary duty to provide Plaintiff the relief set forth by Judge Woodward. See Exhibit 1, pp. 13-15.

46. Plaintiff has a clear right to a Name Clearing Hearing and the name-clearing measures and relief, as set forth by Judge Woodward.

47. Plaintiff has no other meaningful remedy at law by which she can obtain the name-clearing relief, as set forth by Judge Woodward.

48. The name-clearing measures and relief, as set forth by Judge Woodward, are necessary to halt Defendants' ongoing arbitrary, illegal and capricious acts.

WHEREFORE, Plaintiff Doe requests that the Court issue a Writ of Mandamus ordering Defendants to provide Plaintiff Doe the name-clearing relief, as set forth by Judge Woodward, costs, such other relief as the Court deems just and proper.

## COUNT IV
## Maryland Declaration of Rights
## Article 24

49. Plaintiff Doe incorporates by reference the above allegations.

50. Defendants engaged in activities that violated plaintiff's rights as protected under the Maryland Declaration of Rights.

51. Plaintiff has a protected liberty interest in her reputation.

52. As set forth herein, Defendants deprived Plaintiff of her constitutionally protected liberty interest in her good name, reputation, honor and integrity, and she sustained damages as set forth herein.

WHEREFORE, Plaintiff Doe requests judgment against Defendants, jointly and severally, for compensatory damages in the amount of $5,000,000.00, injunctive relief, and attorney's fees and expenses, costs, and for such other relief as the Court deems just and proper.

## COUNT V
## Defamation
## Defendant Dartique

53. Plaintiff Doe incorporates by reference the above allegations.

54. Defendant Dartique made false statements about Plaintiff which imputed to her criminality, incapacity or lack of qualification to fill professional employment positions, and lack of fitness to be admitted to the Maryland bar, as set forth above.

55. In making those false statements, Defendant Dartique acted outside the scope of her employment, and with malice or gross negligence.

56. Defendant Dartique's defamatory communications caused Plaintiff to suffer economic and non-economic damages, including lost pay and benefits, harm to her livelihood and reputation, emotional distress, and other damages.

WHEREFORE, Plaintiff Doe seeks judgment against Defendant Dartique for compensatory damages in the amount of $5,000,000.00, punitive damages in the amount of $5,000,000.00, injunctive relief, and attorney's fees, costs, and expenses, and for such other relief as the Court deems proper.

_____/S/_____
Kathleen Cahill
AIS/CPF #8212010054
The Law Offices of
　　　Kathleen Cahill, LLC
1 Olympic Place
Suite 900
Towson, MD  21204
410-321-6171
kathleen@kathleencahill-law.com

Attorney for Plaintiff