IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

| | |
|---|---|
| JANE DOE | * |
| Plaintiff, | * |
| v. | * Case No. |
| | C-15-CV-25-000307 |
| OFFICE OF THE PUBLIC DEFENDER, et al. | * |
| | * |
| Defendants. | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## PLAINTIFF'S MOTION FOR
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

Plaintiff Jane Doe (hereinafter "Ms. Doe" or "Plaintiff"), by her attorney Kathleen Cahill, hereby moves, pursuant to Md. Rule § 15-505, for the issuance of a preliminary injunction and a permanent injunction against Defendants the Office of the Public Defender and Natasha Dartigue, and in support thereof states:

1. Plaintiff incorporates by reference the allegations of the Complaint and Demand for Jury Trial ("Complaint").

2. With no justification or basis in fact whatsoever, on March 18, 2024, Plaintiff was summarily discharged by OPD over a remote videocall and told she was banned from the premises. She was not told why, she was asked no questions, and she had no opportunity to defend against the secret claims.

3. Shortly before that March 18, 2024 discharge call, the Public Defender, Defendant Dartigue, called a Dean at plaintiff's law school and falsely told him that Plaintiff was fired for stalking a lawyer and posed a potential threat of violence to the lawyer and others.

4. Defendant Dartigue later referred to Plaintiff as "a possible shooter."

5. Prior to communicating to the Dean that Plaintiff was fired for stalking a lawyer and posed a potential threat of violence, Defendant Dartigue performed no investigation whatsoever. Defendant Dartigue had never even met or spoken to plaintiff. Defendant Dartigue had never even met or spoken to the Dean either.

6. After the phone call from Defendant Dartigue, the Dean arranged a meeting with Plaintiff. It was at that meeting that Plaintiff learned that her discharge had been for alleged stalking and being dangerous.

7. In connection with the discharge of Plaintiff, Defendants disseminated to numerous third parties that Plaintiff was dangerous and posed a potential threat of violence. Among others, those false communication were disseminated to OPD and other state employees and security personnel.  Defendants also communicated these outrageous falsehoods to courthouse officials and stated that Plaintiff should be barred from access to courthouse buildings as posing a potential threat of violence to others. Defendants also directed that Plaintiff's photograph be posted in public buildings to be on alert for her as a dangerous person. Defendants also issued communications that led to the consideration of the  issuance by the Maryland Capitol Police of a "BOLO" with respect to Plaintiff.

8. Further, Defendants caused the dissemination throughout the OPD workforce that Plaintiff was fired because she was dangerous which led to the spread of Defendants' deliberately made falsehoods into Plaintiff's law school classmates.

9. Prior to disseminating those deliberately made false communications, Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a

charge, and Defendants failed to ask Plaintiff a single question with respect to those outrageous, highly stigmatizing accusations.

10. On May 23, 2024, Plaintiff notified OPD that it had violated her liberty interest vouchsafed in the Fourteenth Amendment of the United States Constitution and the Maryland Declaration of Rights. Plaintiff asserted that she had a right to a hearing to refute the outrageously false charges and to clear her good name ("the Name Clearing Hearing").

11. Defendant OPD agreed that Plaintiff was entitled to a Name Clearing Hearing

12. On October 14, 2024, a Name Clearing Hearing was conducted before The Honorable Patrick L. Woodward, retired former Chief Judge of the then Maryland Court of Special Appeals, at which both parties had the opportunity to present documentary evidence and call witnesses to testify under oath.

13. On November 27, 2024, in his Hearing Officer's Decision,  Judge Woodward found that: (a) all OPD's allegations against plaintiff were "baseless," (b) that Plaintiff "did not pose any potential threat of violence and Ms. Dartigue's statements to the contrary lacked any credible evidentiary foundation," (c) that Plaintiff "never stalked [an attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (d) OPD publicized false information that was damaging to [Plaintiff's] reputation.  Judge Woodward found that comprehensive name-clearing measures were due and he detailed eleven specific measures that should be undertaken by OPD to clear Plaintiff's name. See Hearing Officer's Decision, attached hereto as Exhibit 1.

14. To date, Defendants have refused to provide any of the name-clearing measures to which Plaintiff is entitled, leaving unremedied and in place to circulate unabated the vicious falsehoods it generated about Plaintiff.

15. The benefits to Plaintiff in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court were to grant the requested injunctive relief. In fact, absolutely zero harm could result to Defendants if this Court were to grant the requested injunctive relief.

16. Without the injunctive relief, Plaintiff will suffer irreparable harm, including the threat to the viability of her imminent application to be admitted to the Maryland Bar in 2025 and the continuing extinguishment of her nascent career in law.

17. Plaintiff has a substantial likelihood of success on the merits of her claims, as determined by Judge Woodward based upon the controlling law and sworn testimony at the Name Clearing Hearing. See Hearing Transcript, to be made available to the Court at the hearing, so as to protect Ms. Doe's identity.

18. The public interest is inarguably served by granting the injunction. The public interest is served by requiring government entities and public officials to perform their duties consistent with constitutional law and by prohibiting defamatory and rogue acts by public officials that deprive individuals of constitutional rights, professional licensure, employment, and their good reputation without factual or legal basis.

19. The Court should dispense with the requirement of a bond with respect to these claims against a state agency and official.

WHEREFORE, Plaintiff Doe requests that:

a.  The Court issue an Order granting Plaintiff a preliminary injunction mandating defendants to provide the relief as set forth by Judge Woodward.

b.  The Court issue an Order granting a permanent injunction mandating Defendants to provide the relief set forth by Judge Woodward.

c.  Plaintiff be granted her costs; and

d.  Plaintiff be granted such other relief as the Court deems just and proper.


_____/S/_____
Kathleen Cahill
AIS/CPF #8212010054
The Law Offices of
        Kathleen Cahill, LLC
1 Olympic Place
Suite 900
Towson, MD  21204
410-321-6171
kathleen@kathleencahill-law.com

Attorney for Plaintiff

E-FILED; Montgomery Circuit Court
Docket: 2/21/2025 8:56 AM; Submission: 2/21/2025 8:56 AM
Envelope: 20056329

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

JANE DOE                                                *

        Plaintiff,                              *

v.                                                      *      Case No.
                                                               C-15-CV-25-000307
OFFICE OF THE PUBLIC DEFENDER, et al.                   *

                                                        *

        Defendants.
*     *     *     *     *     *     *     *     *     *     *     *     *

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff Jane Doe (hereinafter "Ms. Doe" or "Plaintiff"), by her attorney Kathleen Cahill, submits this Memorandum in Support of her Motion for Preliminary and Permanent Injunction.

<u>Facts</u>

Plaintiff incorporates by reference all allegations of the Complaint and Demand for Jury Trial ("Complaint"). Further, Plaintiff bases this Motion on the Findings of Facts as determined by Judge Woodward in his November 27, 2024 Hearing Officer's Decision, See Exhibit 1, proven by the sworn testimony and exhibits presented the parties at the October 14, 2024 Name Clearing Hearing.

In summary, with no justification or basis in fact whatsoever, on March 18, 2024, Plaintiff, a third year law student and law clerk at the Office of the Public Defender (sometimes "OPD"), was summarily discharged over a remote videocall and told she was banned from the premises. She was not told why, she was asked no questions, and she had no opportunity to defend against the secret claims. Shortly before that March 18, 2024 discharge call, the Public Defender, Defendant Dartigue, called a Dean at plaintiff's law school and told him that Plaintiff was fired

for stalking a lawyer and posed a potential threat of violence to the lawyer and others. Defendant Dartigue later referred to Plaintiff as "a possible shooter."

But prior to communicating to the Dean that Plaintiff was fired for stalking a lawyer and posed a potential threat of violence, Defendant Dartigue performed no investigation whatsoever nor did she direct anyone at the Office of Public Defender to do so. She knew no investigation had been conducted and that Plaintiff would be given no opportunity to address the false charges. Defendant Dartigue had never even met or spoken to plaintiff.

After the phone call from Defendant Dartigue, the Dean arranged a meeting with Plaintiff. It was at that meeting that Plaintiff learned that her discharge had been for alleged stalking and being dangerous.

In connection with the discharge of Plaintiff, Defendants disseminated to numerous third parties that Plaintiff was dangerous and posed a potential threat of violence. Among others, those false communication were disseminated to Office of Public Defender personnel and other state employees and security personnel. Defendants also communicated these outrageous falsehoods to courthouse officials and stated that Plaintiff should be barred from access to courthouse buildings as posing a potential threat of violence to others. Defendants also directed that Plaintiff's photograph be posted in public buildings to alert others that she was a dangerous person. Defendants also issued communications to state personnel that led to the consideration of the issuance by the Maryland Capitol Police of a "BOLO" with respect to Plaintiff.

Further, Defendants caused and permitted the dissemination throughout the Office of Public Defender workforce that Plaintiff was fired because she was dangerous, including to a law clerk who attended law school with Ms. Doe, which led to the spread of Defendants' deliberately made falsehoods into Plaintiff's law school community.

Prior to disseminating those deliberately made false communications, Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a charge, and Defendants failed to ask Plaintiff a single question with respect to those outrageous, highly stigmatizing accusations. Moreover, in response to Plaintiff's pleas for an explanation Defendants told her she got none.

<u>Name Clearing Hearing</u>

Ms. Doe has a constitutionally protected liberty interest in her reputation, which was seriously damaged by the conduct and communications of Defendants in connection with her discharge. "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 371 (1971); *see also Bishop v. Wood,* 426 U.S. 341, 348 (1976); *Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.), *cert. denied,* 474 U.S. 903 (1985). In such a situation, due process would allow the employee "an opportunity to refute the charge," or "to clear his name." *Roth,* 408 U.S. at 573 & n. 12; *see also Codd v. Velger,* 429 U.S. 624, 627 (1977). *Id.*

The Maryland courts have held that "[a]n employee's liberty interest may also be implicated when a dismissal is accompanied by charges that might damage the employee's reputation in the community and the employee is given no opportunity to respond or when it imposes on the employee some stigma or disability that forecloses other employment opportunities such as barring him from other public employment." *Samuels v. Tschechtelin,* 135 Md. App. 483, 530–31 (2000) (quoting *Elliott v. Kupferman,* 58 Md. App. 510, 519 (1984)) (internal punctuation removed); *see also Paul v. Davis,* 424 U.S. 693, 709–10 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 573 (1972); *Leese v. Baltimore County,* 64 Md. App. 442, 461–63 (1985), *cert. denied,* 305 Md. 106

3

(1985), *overruled in part on other grounds, Harford County v. Town of Bel Air,* 348 Md. 363 (1998).

On May 23, 2024, Ms. Doe asserted her constitutional right to refute the charges before an impartial tribunal and to clear her name. Defendants consented to her assertion of that right. The resulting Name Clearing Hearing was Ms. Doe's opportunity to be heard, which had been summarily denied, and to clear her name.

On October 14, 2024, a full-day Name Clearing Hearing was conducted before The Honorable Patrick L. Woodward, retired former Chief Judge of the then Maryland Court of Special Appeals, at which both parties had the opportunity to present documentary evidence and call witnesses to testify under oath. Judge Woodward had been mutually selected by the parties and the manner of conducting the proceedings was mutually agreed between the parties. The parties had the opportunity to submit unlimited briefing before and after the hearing.

On November 27, 2024, Judge Woodward issued his Hearing Officer's Decision, finding that: (1) all OPD's allegations against plaintiff were "baseless," (2) that Plaintiff "did not pose any potential threat of violence and Ms. Dartigue's statements to the contrary lacked any credible evidentiary foundation," (3) that Plaintiff "never stalked [an attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (4) the Office of Public Defender publicized false information that was damaging to [Plaintiff's] reputation. Judge Woodward found that under controlling law comprehensive name-clearing measures "must be granted to [Ms. Doe] to mitigate the damage caused by the OPD to her reputation," and he set forth the eleven specific measures that should be undertaken by OPD to clear Plaintiff's name. See Hearing Officer's Decision, attached hereto as Exhibit 1, pp. 13-15; see also Hearing Transcript, to be made available to the Court at the hearing, to protect Ms. Doe's identity.

Argument

Three months have now passed since Judge Woodward's detailed findings and explicit requisite measures with Defendants showing no action whatsoever towards compliance with any of the name-clearing measures to which Plaintiff is entitled. With that, Defendants have elected to leave in place and to circulate unabated the vicious falsehoods it generated about Plaintiff, compounding her great distress and her damages. After one year in total of Defendants' illegal conduct, it is only a court order that will start to remedy the situation.

The four factors to be considered upon motion for a preliminary injunction include:

(1) the likelihood that the plaintiff will succeed on the merits; (2) the "balance of convenience" determined by whether greater injury would be done to the defendant by granting the injunction than would result from its refusal; (3) whether the plaintiff will suffer irreparable injury unless the injunction is granted; and (4) the public interest.

Ehrlich v. Perez, 394 Md. 691, 707–08 (2006).

Inarguably, Plaintiff has a substantial likelihood of success on the merits of her claims, as has already been determined by Judge Woodward based upon the controlling law and sworn testimony at the Name Clearing Hearing.

The benefits to Plaintiff in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court were to grant the requested injunctive relief. In fact, absolutely zero harm could result to Defendants if this Court were to grant the requested injunctive relief. In contrast, to grant the requested injunctive relief will provide the corrective measures that will enable Plaintiff to start to rebuild her career and future as a lawyer, and critically, to pursue her application for admission to the Maryland Bar without the insertion of the extraordinarily damaging falsehoods likely derailing her licensure.

Without the injunctive relief, Plaintiff will suffer irreparable harm, including the threat to the viability of her imminent application to be admitted to the Maryland Bar in 2025 and the continuing extinguishment of her nascent career in law. Without the injunctive relief, Defendants' recalcitrance in the face of the spread of the toxin they unleashed will persist unabated - while the destruction to Plaintiff's career, reputation, and livelihood continues.

The public interest is inarguably served by granting the injunction. The public interest is served by requiring government entities and public officials to perform their duties consistent with constitutional law and by prohibiting defamatory and rogue acts by public officials that deprive individuals of constitutional rights, professional licensure, employment, and their good reputation wholly without factual or legal basis. The public interest also is served by starting to clear the path of the vicious falsehoods so that Ms. Doe, a tremendously able and dedicated aspiring lawyer, can resume her hard work toward becoming a lawyer and a public defender, also thereby contributing to the public good.

<u>Conclusion</u>

For the reasons set forth herein, Plaintiff Doe requests that:

1. The Court issue an Order granting Plaintiff a preliminary injunction mandating defendants to provide the relief due as set forth by Judge Woodward.

2. The Court issue an Order granting a permanent injunction mandating Defendants to provide the relief due set forth by Judge Woodward.

3. Plaintiff be granted her attorney's fees and costs; and

4. Plaintiff be granted such other relief as the Court deems just and proper.

_____/S/_____
Kathleen Cahill
AIS/CPF #8212010054
The Law Offices of
      Kathleen Cahill, LLC
1 Olympic Place
Suite 900
Towson, MD  21204
410-321-6171
kathleen@kathleencahill-law.com

Attorney for Plaintiff

IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY

JANE DOE                                                *

               Plaintiff,                                *

v.                                                      *    Case No.
                                                             C-15-CV-25-000307
OFFICE OF THE PUBLIC DEFENDER, et al.                   *

                                                        *

               Defendants.
*        *        *        *        *        *        *        *        *        *        *        *        *

## ORDER GRANTING
## PRELIMINARY INJUNCTIVE RELIEF

UPON CONSIDERATION of Plaintiff Jane Doe's Motion for Preliminary and Permanent Injunctive Relief and any opposition thereto, and after a hearing, the Court finds as follows:

1. The benefits to Plaintiff in obtaining injunctive relief are equal to or outweigh the potential harm which Defendants would incur if this Court were to grant the requested injunctive relief;

2. Without the injunctive relief, Plaintiff will suffer irreparable harm;

3. Plaintiff has a substantial likelihood of success on the merits of her claims; and

4. The public interest is served by granting the injunction.

ACCORDINGLY, IT IS HEREBY ORDERED this ____ day of _____, 2025, that:

1. Defendants must undertake all measures necessary in order to reverse the measures they implemented and retract any communications they issued to third parties, including but not limited to with regard to banning Ms. Doe from all OPD buildings and courthouses.

2. Defendants must undertake all measures necessary to ensure the removal and retrieval of Ms. Doe's photograph from security posts and from all agencies and locations to which it was disseminated.

3. Defendants must undertake all measures necessary to seek the cancellation and removal of any BOLO that has been issued by the Maryland Capitol Police with respect to Ms. Doe, as well as from any other agencies to whom a BOLO was communicated.

4. Defendants must issue and disseminate a retraction and corrective statement to all third parties to whom it communicated about Ms. Doe stalking, posing a danger, possessing bullets, or engaging in criminal behavior, including but not limited to: University of Baltimore Law School, the Office of Public Defender workforce, and all Maryland agencies involved, including but not limited to the Department of General Services and Maryland Capitol Police, and the Sheriff's Office. The retraction and corrective statement must include that Ms. Doe was a good and successful employee of the Office of Public Defender, that she did not engage in any wrongdoing or misconduct, and that she did not ever and does not pose a danger, nor did she engage in stalking behavior, possess bullets, or engage in criminal behavior. Each statement must be specifically written to correct and retract any and all particular adverse statements made about Ms. Doe to that third party.

5.  The Office of the Public Defender must purge its files of all documentation stating or relating to the assertion that the bullets found in March 2024 in the desk assigned to Ms. Doe at the Office of the Public Defender were possessed by her.

6.  The Office of the Public Defender must purge its files of all documentation stating or relating to the assertion that Ms. Doe stalked attorney Matt Connell, that she engaged in criminal conduct, and that she threatened or posed a potential threat to attorney Matt Connell or to any Office of the Public Defender employee.

7.  Defendants must provide contemporaneous and ongoing reporting of their implementation of these requisite measures, along with full access to counsel for Ms. Doe of all information necessary to monitor and ensure all these requisite measures are undertaken and in a form sufficient to ensure the maximum comprehensive efforts to correct and retract each adverse statement made about Ms. Doe to third parties.

8.  Defendants must affirmatively communicate to the Maryland State Board of Law Examiners that Ms. Doe performed her job well, that she was on track for permanent hire, and that she was fired without any basis. Defendants must refrain from communicating to the Maryland State Board of Law Examiners that Ms. Doe engaged in any wrongdoing or misconduct, stalked attorney Matt Connell, that bullets were found in the desk assigned to Ms. Doe at the Office of the Public Defender were possessed by her or were brought into the OPD's offices by her, that she engaged in criminal conduct, or that she posed a potential threat of violence or danger to attorney Matt Connell or to any Office of the Public Defender employee.

9.  Defendants must refrain from communicating with prospective employers that Ms. Doe engaged in any wrongdoing or misconduct, stalked attorney Matt Connell, that bullets were found in the desk assigned to her at the Office of the Public Defender were possessed by her, or that she engaged in criminal conduct, or that she posed a potential threat of violence or danger to attorney Matt Connell or to any Office of the Public Defender employee.

10. Defendants must refrain from communicating with any third parties that Ms. Doe engaged in any wrongdoing or misconduct, stalked attorney Matt Connell, that bullets were found in the desk assigned to her at the Office of the Public Defender were possessed by her, that she engaged in criminal conduct, or posed a potential threat of violence or danger to attorney Matt Connell or to any Office of the Public Defender employee.

11. Defendants must cooperate fully in all additional measures that become necessary with respect to Ms. Doe's applications to admission to the Maryland State Bar, applications to any other states' bar, applications for employment, applications for security clearances, and any other circumstances in which the history of the Office of the Public Defender's false charges creates a potential impediment to Ms. Doe's access to licensure, employment, or other lawful rights.

Further, there shall be no requirement of a bond with respect to Plaintiff Doe's claims against Defendants, a state agency and public official.

_____
Judge, Circuit Court for Montgomery County