IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | : |
|    Plaintiff, | : |
| v. | :   Case No. 8:25-cv-00717-PX |
| OFFICE OF THE PUBLIC DEFENDER, et al., | : |
|    Defendants. | : |

**DEFENDANT NATASHA DARTIGUE'S MOTION TO DISMISS COMPLAINT**

Defendant Natasha Dartigue, by and through her counsel and pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss the Plaintiff's Complaint (ECF 3-1) and states:

**INTRODUCTION/BACKGROUND FACTS**

This case arises out of the Plaintiff's disagreement over her employer's decision to terminate her at-will employment and a later communication by Ms. Dartigue to a third party about that termination. The Plaintiff, Jane Doe, began working at the Office of the Public Defender ("OPD") in May 2023, initially as an unpaid intern and later as a paid contractual law clerk. (Compl. at ¶ 6) In March of 2024, three hollow point bullets were found in Jane Doe's work desk by an attorney who previously related concerns to the office that Ms. Doe was "stalking" him. Following this discovery, the OPD contacted the attorney that previously occupied Ms. Doe's work space to determine if she possessed or was aware of the bullets. That attorney denied any knowledge of the bullets. On March 18, 2024, after internal discussions within the OPD, Jane Doe's at-will employment was terminated. (Compl. at ¶ 10) As an at-will employee, Ms. Doe's employment was not guaranteed and she had no protected property interest in her employment.

Following the decision to terminate Ms. Doe's employment, Ms. Dartigue, the Public Defender, contacted the Dean at Ms. Doe's law school to facilitate the transfer of Ms. Doe's

personal items back to her. During the course of her conversation with the Dean, and in response to specific questions, the Plaintiff alleges that Ms. Dartigue disclosed that Ms. Doe was fired for "stalking a lawyer and posed a potential threat of violence to him and others." (Compl. at ¶ 11)[1] The Plaintiff further alleges that Ms. Dartigue referred to Ms. Doe as "a possible shooter[,]"without further explaining to whom such statements were made. (Compl. at ¶ 16)

The Plaintiff also makes several allegations against the Defendants globally including that in connection with her discharge, the "Defendants" disseminated to "numerous third parties that Plaintiff was dangerous and posed a potential threat of violence" without identify what, if any of this information was disseminated by Ms. Dartigue. (Compl. at ¶ 14) Similarly, the Plaintiff alleges, without identifying the particular Defendant responsible, that the "Defendants" communicated these "falsehoods to courthouse officials and requested to have plaintiff barred from access to courthouse buildings as posing a potential threat of violence to others[]," that the "Defendants" had Plaintiff's photograph "posted in public buildings to be on alert for her as a dangerous person," the "Defendants issued communications" leading to the "potential issuance by the Maryland Capitol Police of a 'BOLO'" and the "Defendants caused the dissemination throughout the workforce" at the OPD offices that Jane Doe "was fired because she was dangerous." (Compl. at ¶ 14, 15)

In her Complaint, the Plaintiff makes the conclusory statement that the "Defendants" did not investigate before making these allegations and alleges that the "Defendants failed to ask the Plaintiff a single question with respect to those outrageous highly stigmatizing accusations."

---

[1] At the Name Clearing Hearing, the Dean testified that Ms. Dartigue explained that there had been no direct threat of violence, but that there was a concern of a potential threat. Following this call, the Dean did not believe that Ms. Doe was a threat based on the information provided, and there is no allegation that the Dean or the school took further action.

(Compl. at ¶ 17)[2]  Following Ms. Doe's discharge from the OPD, she requested a Name Clearing Hearing which was held before the Honorable Patrick L. Woodward.  The Complaint alleges that the "Defendants have steadfastly refused to provide any of the name-clearing remedies… ." (Compl. at ¶ 22) Notwithstanding these allegations, the OPD fully complied with measures outlined by Judge Woodward in his decision. Accordingly, Counts II and III seeking, respectively, Affirmative Injunction and a Writ of Mandamus, are now moot and must be dismissed as the name clearing hearing has taken place and the OPD has fully complied with the relief ordered.

In Counts I and IV of her Complaint, Jane Doe seeks damages against both the OPD and Ms. Dartigue, personally for violating the Fourteenth Amendment under 42 U.S.C. §1983 and Article 24 of the Maryland Declaration of Rights  asserting that the OPD and Ms. Dartigue (while acting in her official capacity) "deprived the Plaintiff of her protected liberty interest in her good name, reputation, honor and integrity[]" (Compl. at ¶¶ 29, 52) and as a result, she suffered damages. These claims should be dismissed against Ms. Dartigue because she did not violate any protected liberty interest, and her actions were at best negligent, and therefore not actionable under the Fourteenth Amendment or the Maryland Declaration of Rights.

In Count V, Ms. Doe sues Ms. Dartigue individually for defamation alleging that Ms. Dartigue "made false statements about Plaintiff which imputed to her criminality, incapacity or lack of qualification to fill professional employment positions, and a lack of fitness to be admitted to the Maryland bar … ." (Compl. at ¶ 54)  Count V should be dismissed because Ms. Doe's bald and conclusory allegations that Ms. Dartigue acted outside the scope of her employment and that she acted with malice or gross negligence (Compl. at ¶ 55) are insufficiently pled, because Ms.

---

[2] Contrary to the allegation that the OPD "performed no investigation whatsoever" (Compl. at ¶17), as set forth above, the OPD did investigate and following that investigation grew concerned that Ms. Doe might pose a danger. Indeed, in combination, the reported stalking and the discovery of bullets raised serious concerns that the OPD could not ignore, and the OPD made the decision to terminate her employment.

Dartigue, as public defender, is entitled to statutory immunity, because the claims are barred by the common and public interest privileges, and because the statements made in response to direct questions were not false.

## STANDARD OF REVIEW

A defendant may "test[] the legal sufficiency of a complaint" by way of a motion to dismiss under FCRP 12(b)(6). *Goodman v. Praxair, Inc*. 494 F.3d 458, 464 (4thCir. 2007). Although the Court must "accept the factual allegations in the complaint as true and construe[s] them in the light most favorable to the non-moving party," (*Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018)), the "Federal Rules do not require courts to credit a complaints conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009). Courts must not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal citations omitted); *see Iqbal*, 556 U.S. at 663 ("…the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of actions elements, supported by mere conclusory statements.") The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp*., 126 F. Supp. 3d 521, 526 (D. Md. 2015) quoting *Iqbal*, 556 U.S. at 6779), aff'd as modified, 659 F. App'x 744 (4th Cir. 2016).

## ARGUMENT

**A. Counts I and IV -- the "Constitutional Claims."**

Both Article 24 and the Due Process Clause of the Fourteenth Amendment protect an individual's interests in substantive and procedural due process. *See Office of People's Counsel v. Maryland Pub. Serv. Comm'n,* 355 Md. 1, 26–27, 733 A.2d 996 (1999) (discussing substantive

4

due process); *Roberts v. Total Health Care, Inc.,* 349 Md. 499, 508–09, 709 A.2d 142 (1998) (discussing procedural due process). Courts have consistently equated the Due Process Clause and Article 24. *Comm'n on Med. Discipline v. Stillman,* 291 Md. 390, 414 n. 9, 435 A.2d 747 (1981); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052 (1980); *City of Annapolis v. Rowe,* 123 Md. App. 267, 270, 717 A.2d 976 (1998) (stating that Article 24 " 'protects due process rights and is construed *in pari materia* with the federal Due Process Clause' " (citation omitted)). As a result, Supreme Court decisions interpreting the Due Process Clause "are practically direct authority for the meaning of the Maryland provision." *Garnett v. State,* 332 Md. 571, 613 n. 20, 632 A.2d 797 (1993); *accord Owens v. State,* 352 Md. 663, 669 n. 3, 724 A.2d 43, *cert. denied,* 527 U.S. 1012, 119 S.Ct. 2354, 144 L.Ed.2d 250 (1999).

Here, Jane Doe must establish that she had a protected property interest in her "good name, reputation, honor and integrity" (Compl. ¶¶ 28, 29), that she was deprived of that interest, and that she was afforded less process than was due in order to be successful in an action alleging denial of procedural due process in violation of a property interest. *Samuels v. Tschechtelin,* 135 Md. App. 483, 523, 763 A.2d 209, 231 (2000), citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–41, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Rowe,* 123 Md. App. at 275–76, 717 A.2d 976. The allegations in the Complaint are insufficient to state a due process claim.

   1. ***Ms. Dartigue did not violate a protected property interest.***

In *Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 547 (D. Md. 2001) this Court dismissed a city employee's §1983 claim arising after he was (1) fired for allegedly catching rockfish out of season;  (2) the city publicly disclosed private matters, including that he was "handicapped," details of his separation, and details of his separation;  (3) publicly accusing him of dishonesty for "double-dipping;" and (4) and denying the plaintiff a name clearing hearing.  In its decision, the

court found the Supreme Court decision in *Paul v. Davis*, 424 U.S. 693 (1976) to be dispositive. In *Davis*, the Court found that a plaintiff may not rely on alleged defamatory statements as a basis for a due process claim asserted under §1983 and that harm to a person's reputation is not deprivation by a state of a plaintiff's due process interests.[3] *Id*. at 712.

In some instances a liberty interest may be implicated when dismissal from employment is accompanied by charges that could damage someone's reputation, and the employee is given no opportunity to respond, or the stigma associated with the dismissal forecloses other employment opportunities (*e.g.* banning the employee from other public employment); however, that is not the case here. Indeed, Ms. Doe was afforded a name clearing hearing and the Complaint contains only bald and conclusory allegations that Ms. Doe's name has been "sull[ied]" and that she has been "foreclose[d] from employment and professional licensure and opportunities." (Compl. ¶32) As the Fourth Circuit found in *Carroll v. City of Westminster*, 52 F.Supp.2d 546, 562 (D.Md.1999), "[E]ven if ... statements 'may have been defamatory under state law, that tort alone does not constitute a constitutional deprivation. Rather, unjustified state action must so seriously damage the plaintiff's reputation and standing in his community as to foreclose his freedom to take advantage of other economic opportunities.'" *Id*. at 562 (quoting *Jackson v. Long,* 102 F.3d 722, 730 (4th Cir. 1996)) There is no allegation that Ms. Doe suffered from any of these consequences.

Similarly, in *Bunting v. City of Columbia*, 639 F.2d 1090 (4th Cir. 1981), the Fourth Circuit dismissed two police officer's constitutional claims arising from certain allegedly defamatory

---

[3] Ms. Doe was an at-will employee, meaning her employment was terminable without cause. As the designation implies, an employer may generally terminate an at-will employee at any time, for almost any reason or for no reason. *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 303, 596 A.2d 1069 (1991); *University of Baltimore v. Iz,* 123 Md.App. 135, 170, 716 A.2d 1107, *cert. denied,* 351 Md. 663, 719 A.2d 1262 (1998); *Shapiro v. Massengill,* 105 Md.App. at 754, 661 A.2d 202. Thus, to the extent that Jane Doe is alleging a deprivation related to her employment, that claim also fails.

comments by the Police Chief about the officers' dismissals that were published in the local newspaper. In support of the dismissal, the Court stated:

> we are not willing to conclude that they were stigmatized to such a degree that their freedom to take advantage of other employment opportunities was foreclosed. Certainly, a person who has been fired may be somewhat less attractive to other potential employers, but it would be stretching the concept too far to conclude that a person's liberty interest is impaired merely because he has been discharged.

*Id.* at 1094–95 (citations omitted).

Here, Ms. Doe's makes three allegations against Ms. Dartigue: (1) that Ms. Dartigue called a Dean at the law school and told him that the Plaintiff was fired for stalking a lawyer and posed a potential threat of violence to him and others (Compl. ¶11); (2) that prior to this communication, Ms. Dartigue performed no investigation and had never met or spoken to the Plaintiff or the Dean (*Id*. ¶12); and (3) that Ms. Dartigue referred to Plaintiff as 'a possible shooter'" (*Id*. ¶16) (without stating to whom the reference was made).[4] These allegations against Ms. Dartigue (and the OPD) do not come close to the required standard of serious damage, foreclosing Ms. Doe's ability to avail herself of economic opportunities. As such, her constitutional claims fail.[5]

---

[4] The remainder of the allegations refer generally to the "Defendants," without specifying which defendant – the OPD or Ms. Dartigue – is responsible for each alleged act. *See Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937. ("[A] plaintiff must provide specific facts supporting the elements of each claim and must allege facts showing a causal link between each defendant and Plaintiff's injury or damage.") The allegations also lack any specifics as to the identity of the third parties or courthouse officials who allegedly received the information, and the Complaint is devoid of any specific damage allegedly resulting from the Defendants' actions. *See e.g*. Compl. ¶14 ("Defendants disseminated to various third parties…communicated falsehoods to courthouse officials," "requested to have plaintiff barred from access to courthouse buildings," "directed that Plaintiff's photograph be posted in public buildings," and issued communications that led to the potential issuance… of a 'BOLO'" … .); Compl. ¶15 ("Defendants caused the dissemination throughout … the OPD that Plaintiff was fired because she was dangerous[]" … which "led to the spread of … falsehoods throughout Plaintiff's law school community"); Compl. ¶17 ("…Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a charge, and … failed to ask Plaintiff" about the accusations.)

[5] To the extent the OPD raises additional arguments that apply to Ms. Dartigue, Ms. Dartigue adopts and incorporates those arguments herein.

### 2. Ms. Dartigue's actions were at best negligent and as such are not actionable under the Fourteenth Amendment or the Maryland Declaration of Rights.

The Supreme Court in *Daniels v. Williams* held that negligence is not actionable under § 1983, because a negligent act by a public official is not an abuse of governmental power but merely a "failure to measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)

At best, Ms. Dartigue's actions in communicating to the Dean could be characterized as negligent, and as set forth above, mere negligence is insufficient to support a constitutional violation. Courts require a showing that the defendant's conduct be reprehensible to at least the degree of gross negligence or deliberate indifference to fundamental rights before liability may attach.

The Complaint fails to identify any specifics acts that support her claim that Ms. Dartigue acted maliciously towards Ms. Doe; indeed, Ms. Doe concedes that Ms. Dartigue had never even met or spoken to her or the Dean. (Compl. ¶12) Thus, what possible evil motive could Ms. Dartigue have had? The plaintiff alleges that the information provided to the Dean was false, not that it was transmitted with evil intent or motive. Ms. Dartigue did not contact Dean Manrique for the purpose of disclosing that she had been terminated; rather the purpose of the call was to facilitate transfer of Ms. Doe's belongings. It was only after the Dean probed for more information about whether there was a safety concern did she reveal further limited information.

### B.     Count V- Defamation

"A defamatory statement is one which tends to expose a person to public scorn, hatred, contempt, or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person. *Offen v. Brenner*, 402 Md. 191, 198-199 (2007) (cleaned up).

8

"A false statement is one that is not substantially correct." *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (quoting *Batson v. Shiflett*, 325 Md. 684, 726 (1992)). Under Maryland law, to present a prima facie case for defamation,

> a plaintiff must ordinarily establish that the defendant made a defamatory statement to a third person; that the statement was false; that the defendant was legally at fault in making the statement; and that the plaintiff thereby suffered harm.

*Gohari v. Darvish*, 363 Md. 42, 54, 767 A.2d 321, 327 (2001) A defendant, in a defamation suit, may assert a qualified, or conditional, privilege.[13] *See generally* DAN B. DOBBS, THE LAW OF TORTS, §§ 413–414 (2000) [hereinafter THE LAW OF TORTS].[14] As the Maryland Appellate Court succinctly stated, "[t]here are circumstances in which a person will not be held liable for a defamatory statement because the person is acting 'in furtherance of some interest of social importance, which is entitled protection.' " *Woodruff v. Trepel,* 125 Md.App. 381, 391, 725 A.2d 612, 617 (1999), *cert. denied,* 354 Md. 332, 731 A.2d 440 (1999) (quoting W. PAGE KEETON ET AL., PROSSER AND KEETON ON TORTS § 114, 815 (5th ed.1984)); *see also Miner v. Novotny,* 304 Md. 164, 167, 498 A.2d 269, 270 (1985) ("For reasons of public policy, the law of defamation recognizes certain communications as privileged, and thereby affords those who publish such communications immunity from liability.").

1. ***Ms. Dartigue's alleged statements.***

The Plaintiff alleges that Ms. Dartigue contacted the Dean at the plaintiff's law school and told him that the plaintiff was fired for stalking a lawyer and posed a potential threat of violence to him and others. (Compl. ¶ 11)  The plaintiff does not identify which defendant made the other allegedly defamatory comments or to whom the comments were made. (*See Id.* ¶¶  14, 15) Nor does the plaintiff elaborate on the circumstances surrounding the alleged statement by Ms. Dartigue that the plaintiff was "a possible shooter." (Compl. ¶ 16)

To establish a claim for defamation, the plaintiff must allege all four elements as set forth above, including that the statement was false.

2. ***Ms. Dartigue has statutory immunity***.

State personnel have statutory immunity from tort claims for actions taken in the scope of their public duties, so long as the personnel acted without malice or gross negligence. See Md. Code Ann., Cts. & Jud. Proc., § 5-522(b); Md. Code Ann., State Gov't, § 12-105. Under State Gov't, § 12-101(a), Ms. Dartigue is considered State personnel. Indeed, the Complaint alleges that Ms. Dartigue "is the appointed head and final decisionmaker of OPD serving as public defender under state law, and at all material times acted under color of state law, policy or custom." (Compl. ¶ 3)

While Ms. Doe makes the conclusory allegation that Ms. Dartigue acted outside the scope of her employment and with malice or gross negligence (Compl ¶ 55), she offers no support for these bald allegations. Indeed, the Complaint is devoid of any allegation that explains *how* Ms. Dartigue acted outside the scope of her employment when she contacted the Dean about Ms. Doe or *how* her conduct was malicious or grossly negligent.

Malice is "characterized by evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud." *Lee v. Cline*, 384 Md. 245, 268 (2004) (internal citations omitted) quoting *Shoemaker v. Smith*, 353 Md. 143, 163 (1999)). Gross negligence is defined as "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another… ." *Barbre v. Pope*, 402 Md. 157, 187 (2007) citing *Boyer v. State*, 323 Md. 558, 578-79) (1991) (holding conclusory allegations of gross negligence insufficient to bring the claim outside of the immunity afforded under the Maryland Tort Claims Act)). Ms. Doe's malice allegation is incompatible with her Complaint in that she alleges that Ms.

10

Dartigue "had never met or even spoken to plaintiff." (Compl ¶ 12) It is inconceivable that Ms. Dartigue would have the requisite evil or wrongful motive, intent to injure, knowing and deliberate wrongdoing, ill-will or fraud necessary to show malice toward someone she had never met.  Nor is there any allegation that supports a showing of gross negligence which requires an intentional failure to perform.

> 3. **The Plaintiff's claims against Ms. Dartigue are barred by the common interest and public interest privileges.**

In *Marchesi v. Franchino,* 283 Md. 131, 387 A.2d 1129 (1978), the Maryland Supreme Court explained:

> The common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest.... Specifically, the common law recognized that a person ought to be shielded against civil liability for defamation where, in good faith, he publishes a statement in furtherance of his own legitimate interests, or those shared in common with the recipient or third parties, or where his declaration would be of interest to the public in general.

*Marchesi,* 283 Md. at 135–36, 387 A.2d at 1131 (internal citations omitted);

> There are four basic common law qualified privileges:
>
> (1)The public interest privilege, to publish materials to public officials on matters within their public responsibility; (2) the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others; (3) the fair comment privilege; and (4) the privilege to make a fair and accurate report of public proceedings.

THE LAW OF TORTS, *supra,* § 413, at 1158 (footnote omitted);

Common interest may include "interests in property, business and professional dealings," *id.,* and can "inhere in business dealings between the publisher and the recipient." *Hanrahan v. Kelly,* 269 Md. 21, 28 n. 2, 305 A.2d 151, 156 n. 2 (citing *Deckelman v. Lake,* 149 Md. 533, 131 A. 762 (1926); *Bavington v. Robinson,* 124 Md. 85, 91 A. 777 (1914)). Common interests are

11

usually found among members of identifiable groups in which members share similar goals or values or cooperate in a single endeavor.... The idea is to promote free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit.... The privilege does not arise in the first place unless the communication relates in some degree to the common interest, and once the privilege arises it is lost if it is abused by malice or excessive publication. THE LAW OF TORTS, *supra,* § 414, at 1160–61.

The Plaintiff alleges that Ms. Dartigue advised the Dean that Ms. Doe was fired for stalking a lawyer and posed a potential threat of violence. (Compl. ¶ 11) Ms. Dartigue, acting on behalf of the OPD, shared a common interest with the Dean of Ms. Doe's law school in that she had information that suggested Ms. Doe *might* pose a threat. It was undoubtedly in the law school's interest to have information related to a possible threat.

The rule regarding the protection of interest of the recipient or a third person has been explained as follows:

> (1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that
> (a) there is information that affects a sufficiently important interest of the recipient or a third person, and
> (b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.
> (2) In determining whether a publication is within generally accepted standards of decent conduct it is an important factor that
> (a) the publication is made in response to a request rather than volunteered by the publisher *or*
> (b) a family or other relationship exists between the parties.

RESTATEMENT (SECOND) OF TORTS § 595, at 268 (emphasis added); *see also Darvish,* 130 Md.App. at 275, 745 A.2d at 1139–40. The comment regarding subsection (1) of the Restatement states that "a statement made for the protection of a lawful business, professional, property or other

pecuniary interest ... comes within the rule stated in this Section." RESTATEMENT (SECOND) OF TORTS § 595, at 270. Additionally, the comment states that "[i]t is enough that the circumstances are such as to lead to the reasonable belief that the third person's interest is in danger." *Id.* The statements made by Ms. Dartigue regarding Ms. Doe fall here.

### 4. *The statements by Ms. Dartigue were not false.*

It is alleged that when Ms. Dartigue spoke with the Dean, she reported that Ms. Doe was a potential threat. This statement was true. Three unexplained hollow point bullets were found in Ms. Doe's desk by an Assistant Public Defender that had reported he was being "stalked" by Ms. Doe.  The OPD spoke with the attorney who previously occupied Ms. Doe's desk and she reported that she knew nothing about the bullets. Therefore, at the time the statement was made to the Dean, the statements were true. The plaintiff must establish all four elements, including that the statement was false. *Piscatelli*, 424 Md. at 306.  The plaintiff "carries the burden to prove falsity." *Id*. (cleaned up.)  But even if the statements were false, because Ms. Dartigue was acting in furtherance of a common interest – protection of the public – her statements are entitled to protection. *Lindenmuth v. McCreer*, 233 Md. App. 343, 357 (2017).[6]

---

[6] Ms. Dartigue made the statements to the Dean in response to the Dean's specific inquiries. Indeed, the Plaintiff herself testified at the Name Clearing Hearing that it was "after some prodding" that Ms. Dartigue told the Dean the reason for Ms. Doe's dismissal.  "The fact that the recipient has made the request is an indication that he, at least, regards the matter in respect to which information is desired as sufficiently important to justify the publication of any defamatory matter than may be involved in response to the request. In that case, the person requested to give information is not required nicely to evaluate the interest that the person making the request seeks to protect, nor to make that comparison otherwise required of him, between the harm likely to be done to the other's reputation if the defamatory matter is false and the harm likely to be done to the third person's interest if the it should prove true." *Darvish*, 363 Md. 42, 60, 767 A.2d 321, 330-31, citing RESTATEMENT (SECOND) OF TORTS § 595, at 273–74. In *Fresh v. Cutter,* 73 Md. 87, 92, 20 A. 774, 775 (1890), the Maryland Supreme Court stated: "[i]f ... the statement be made in response to an inquiry, it would undoubtedly be privileged." (Citations omitted).

## CONCLUSION

For the foregoing reasons, Natasha Dartigue respectfully requests that the Court dismiss the Complaint with prejudice.

                    Respectfully submitted,

                    MILLER, MILLER & CANBY

                    *Donna E. McBride*
                    Donna E. McBride, Fed. Bar No. 14148
                    dmcbride@mmcanby.com
                    200-B Monroe St.
                    Rockville, MD 20850
                    (301) 762-5212
                    (301) 762-6044 (fax)
                    *Counsel for Defendant Natasha Dartigue*

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2025, a copy of the foregoing was served via CM/ECF on counsel of record for Plaintiff Jane Doe and co-Defendant, the Office of the Public Defender.

                    */s/ Donna E. McBride*
                    Donna E. McBride