IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | * |
|     *Plaintiff*, | * |
| v. | *   No. 8:25-cv-717 PX |
| | * |
| OFFICE OF THE PUBLIC DEFENDER, ET AL., | * |
|     *Defendants*. | * |

PLAINTIFF'S OPPOSITION TO DEFENDANT OFFICE OF THE PUBLIC DEFENDER'S MOTION TO DISMISS

Plaintiff Jane Doe, by her undersigned counsel, hereby opposes Defendant Office of the Public Defender's Motion to Dismiss. The Motion to Dismiss should be denied.

Procedural Background

Plaintiff Doe filed this Complaint in the Circuit Court for Montgomery County on January 21, 2025. The Complaint states claims for monetary and injunctive relief against the Office of the Public Defender (hereinafter "OPD") for violations of her federal and state constitutional rights, and against the Public Defender, Natasha Dartigue, for violations of her federal and state constitutional rights and for defamation.

Plaintiff Doe filed her Motion for Preliminary and Permanent Injunctive Relief on February 21, 2025. Thereafter, Defendants removed the case to this Court on March 4, 2025. This Court entered the Consent Order Granting Preliminary Injunctive Relief on March 13, 2025. Defendants have now filed for dismissal of all claims under FRCP 12(b)(6).[1]

---

[1] Defendant Natasha Dartigue filed a separate motion to dismiss, as to which has been filed Plaintiff's Opposition to Defendant Natasha Dartigue's Motion to Dismiss Complaint. Any arguments applicable to both Defendants are incorporated here.

<u>Standard on Motion to Dismiss</u>

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015))  In assessing a claim's plausibility standard, this Court, must draw all reasonable inferences in the plaintiff's favor. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). However, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1420 (3d Cir. 1997).

<u>Introductory Statement Regarding the Complaint</u>

Defendant OPD selectively cites from the Complaint omitting numerous central allegations. Because there is more to the allegations than Defendant's truncated version suggests, Plaintiff reiterates the allegations here.

In addressing the sufficiency of the allegations of the Complaint, it is necessary to also consider Complaint Exhibit 1, the Hearing Officer's Decision, which is incorporated into the Complaint. That is particularly important with regard to the Findings of Fact of the Honorable Patrick L. Woodward, retired Judge of the Maryland Court of Special Appeals (now the Appellate Court of Maryland) concerning the conduct of Defendant Dartigue, as explained herein.

Facts Alleged in the Complaint

When the events at issue started, Plaintiff Doe was a second-year law student. Plaintiff has since received her Juris Doctorate in May 2025 and she sat for the Maryland Bar in July 2025. Compl. ¶5.

From May 2023 until March 18, 2024, Plaintiff worked at OPD. Plaintiff initially served as an unpaid intern through the law school. Given her exceptional service, on October 25, 2024, Plaintiff was hired as a paid contractual law clerk for a term extending through June 30, 2024. Compl. ¶6. At all relevant times, Plaintiff was an extraordinarily dedicated and proficient law clerk. Plaintiff earned favorable reviews, she was never disciplined, and she was advised that based on her capabilities and performance she was on track to accomplish her career goal of being hired as a public defender upon completion of law school and admission to the Maryland Bar. Compl. ¶7.

Through her good character and honorable conduct, Plaintiff earned an exemplary reputation for her professionalism and integrity in her law school and in the community. Compl. ¶8. Throughout her tenure at OPD, Plaintiff conducted herself with the utmost propriety, professionalism, and integrity. Compl. ¶9.

With no justification or basis in fact whatsoever, on March 18, 2024, Plaintiff was summarily discharged by OPD over a remote videocall and told she was banned from the premises. Plaintiff sought to learn the basis for the adverse action, but OPD refused to provide any explanation and unequivocally said none would be forthcoming. Plaintiff was deprived of any opportunity to address whatever was the alleged basis of her sudden discharge and banishment. Compl. ¶10.

Shortly before that March 18, 2024 discharge videocall, Defendant Darnigue called a Dean at plaintiff's law school and falsely told him that plaintiff was fired for stalking a lawyer and that she posed a potential threat of violence to him and others. Compl. ¶11.  Prior to communicating that to the Dean, Defendant Dartigue performed no investigation whatsoever. Compl. ¶12.

After the phone call from Defendant Dartigue, the Dean arranged a meeting with Plaintiff. It was at that meeting that Plaintiff learned that her discharge had been for alleged stalking and being dangerous. Compl. ¶13.

In connection with the discharge of Plaintiff, Defendants disseminated to numerous additional  third parties that Plaintiff was dangerous and posed a potential threat of violence. Among others, such false communication were disseminated to the OPD workforce and other state employees and security personnel.  Defendants also communicated those baseless falsehoods to courthouse officials and requested that Plaintiff be barred from access as a dangerous person. Defendants also directed that Plaintiff's photograph be posted in public buildings to be on alert for her as a dangerous person. Defendants also issued communications that caused the Maryland Capitol Police to consider issuing a "BOLO" with respect to Plaintiff. Compl. ¶14. Defendant Dartique referred to Plaintiff as "a possible shooter." Compl. ¶16.

Further, once Defendants told OPD employees that Plaintiff was fired because she was dangerous, that spread to Plaintiff's law school classmates and community. Compl. ¶15.

Prior to disseminating those deliberately made false communications, Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a charge, and Defendants failed to ask Plaintiff a single question with respect to those outrageous, highly stigmatizing accusations. Compl. ¶17.

On May 23, 2024, Plaintiff notified OPD that because it had violated her liberty interest vouchsafed in the Fourteenth Amendment of the United States Constitution and the Maryland Declaration of Rights, she had a right to a hearing to refute the outrageous false charges and to clear her good name ("the Name Clearing Hearing"). Compl. ¶18.

Defendant OPD agreed that Plaintiff was entitled to a Name Clearing Hearing. Compl. ¶19.

On October 14, 2024, a Name Clearing Hearing was conducted for approximately six hours before The Honorable Patrick L. Woodward, retired Judge of the Maryland Court of Special Appeals, now the Appellate Court of Maryland. Judge Woodward was selected as the hearing officer from a vendor panel Defendants' identified. At the Name Clearing Hearing, Plaintiff and OPD both had the opportunity to call witnesses, present documentary evidence, and submit legal argument orally and in written briefing. Witnesses testified under oath. Compl. ¶20. [2]

On November 27, 2024, Judge Woodward issued a 15-page Hearing Officer's Decision. Judge Woodward found, among other things, that: (a) all OPD's allegations against Plaintiff were "baseless," (b) that Plaintiff "did not pose any potential threat of violence and Ms. Dartique's statements to the contrary lacked any credible evidentiary foundation," (c) that Plaintiff "never stalked [an attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (d) OPD "published false information to third parties damaging to [Plaintiff's] reputation." Compl. ¶21.

Significantly, at the Name Clearing Hearing, Defendant Dartigue denied under oath telling the Dean that Plaintiff was fired for stalking a lawyer. But the Judge found it was the Dean's

---

[2] The hearing was also video recorded.

testimony that Defendant Dartigue told him Plaintiff was fired for stalking a lawyer that was credible, not Defendant Dartigue's denial. Compl. Exhibit 1.

Judge Woodward found as Fact:

"3. <u>Potential Threat of Violence</u>. On Monday March 18, 2024, Ms. Dartigue contacted Dean Paul Manrique of the University of Baltimore School of Lawe to see if he would assist in returning Ms. Doe's personal belongings from her office at the OPD. According to Dean Manrique's testimony, in their telephone conversation Ms. Dartigue disclosed that Ms. Doe was going to be terminated for stalking an OPD attorney. When Dean Manrique inquired about a threat of violence, Ms. Dartigue responded that there was no direct threat of violence a "a concern of potential threat." Ms. Dartigue also told Dean Manrique that Ms. Doe had been banned from all OPD offices and that if she returned to the office, a peace order would be sought. When Ms. Dartigue asked about any history of any similar sort of behavior, Dean Manrique said that Ms. Doe "was a standout student leader at the law school and there had been no concerns about her in the past." *Although Ms. Dartigue testified that she did not share any reason for Ms. Doe's termination with Dean Manrique and that she did not have any information to share with him regarding any threat of violence, the Hearing Officer credits Dean Manrique's testimony on this subject.* Dean Manrigue prepared contemporaneous notes of his conversation on a Compass case Management Submission Form while Ms. Dartigue did not make any notes. There is no way Dean Manrique would have known of allegations of 'stalking' or a potential threat of violence but for his conversations with Ms. Dartigue. Finally, the first time that Ms. Doe learned of the charge of stalking was in a conversation with Dean Manrique a day or two after her termination."
Compl. Exh. 1, Findings of Fact, p. 9 (emphasis added).

In the Hearing Officer's Decision, Judge Woodward concluded that "specific relief must be granted to [Plaintiff] to mitigate the damage caused by the OPD to her reputation," and went on to detail the specific measures that should be undertaken by OPD to clear Plaintiff's name. Compl. ¶21, Exh. 1.

But Defendants steadfastly refused to provide any of the name-clearing measures, leaving in place to circulate unabated the baseless falsehoods they generated, continuing and compounding the damage to Plaintiff's reputation and career. Compl. ¶¶22, 24.

Plaintiff has suffered and continues to suffer extreme damage to her reputation and career as a result of Defendants' acts and omissions. The stigma resulting from Defendants' outrageous falsehoods jeopardizes Plaintiff's admission to the Maryland Bar or that of any state or federal court, and forecloses employment and other opportunities. Compl. ¶23. As a result of Defendants' actions, Plaintiff Doe has suffered economic and non-economic damages, including a loss of pay and benefits, harm to her livelihood and reputation, emotional distress, and other damages to be proven at trial. Compl. ¶25.

Defendant's Argument

1. <u>Count I States a Claim as to Which Relief can be Granted.</u>

Defendant asserts that Count I should be dismissed because as a state agency it cannot be sued under 42 U.S.C. §1983. First, Plaintiff asserts that Defendant waived its Eleventh Amendment immunity by voluntarily removing this case to federal court. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.,* 535 U.S. 613 (2002). Further, under the <u>Ex Parte Young</u> exception, Defendant is not immune from suit under the Eleventh Amendment as to Plaintiff's claims for injunctive relief. See *Rounds v. Clements*, 495 Fed.Appx. 938 (10th Cir.

7

2012)(Gorsuch, J): "Under our case law, the failure to reinstate privileges that remain currently and wrongfully withheld under federal law, together with a request for relief limited to prospective injunctive relief, is enough to render a defendant subject to suit under Ex Parte Young. See *Meiners v. Univ. of Kan.,* 359 F.3d 1222, 1232 (10th Cir.2004). As best we can tell, every other circuit to face the question has reached this same conclusion. See, e.g., *Nelson v. Univ. of Tex.,* 535 F.3d 318, 323–24 (5th Cir.2008); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96–98 (2d Cir.2007); *Whalen v. Mass. Trial Court,* 397 F.3d 19, 29–30 (1st Cir.2005); *Carten v. Kent State Univ.,* 282 F.3d 391, 395–96 (6th Cir.2002); *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839–41 (9th Cir.1997); *Coakley v. Welch*, 877 F.2d 304, 306 (4th Cir.1989); *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir.1986)." *Id*. at 940-941.

The Defendant has recognized Plaintiff's right to injunctive relief by entering into the Consent Order Granting Preliminary Injunctive Relief in the current proceeding. Notably, the injunction is only preliminary and the claims for permanent injunctive relief were not the subject of the Consent Order Granting Preliminary Injunctive Relief.

Moreover, Plaintiff also asserts claims for economic and non-economic compensatory damages for the violation of her constitutional liberty interest, as well as for attorney's fees. Plaintiff's claims for economic and non-economic compensatory damages for the violation of her constitutional liberty interest are well-pled and cognizable. See *Memphis Community School Dist. V Stachura*, 477 U.S. 299, 305 (1986); *Carey v. Piphus*, 435 U.S. 247, 254 (1978). They are unchallenged by Defendant's motion to dismiss. Critically, it took Defendant six months to convene the required Name Clearing Hearing and Defendant refused to even begin addressing the measures required to clear Ms. Doe's name for *one year and two days*. Throughout that period, the baseless falsehoods Defendant generated remained in unrestrained circulation,

8

continuing and compounding the damage to Plaintiff's reputation and career. The damages to Plaintiff's nascent legal career from being labeled a dangerous criminal by her only law school employer, the Public Defender no less, cannot be overstated. The damages resulting from the profound impact to Plaintiff's reputation, career, and emotional well-being continue to date and will persist into the future.

Plaintiff's claims stated in Count I are plausible and should be permitted to proceed.

2. <u>Counts II and III</u> <u>State Claims as to Which Relief can be Granted.</u>

Defendant asserts that Counts II and III should be dismissed claiming that "since the [Consent Order Granting Preliminary Injunctive Relief] has been granted by consent, and the OPD is in full compliance with Judge Woodward's decision, there is no controversy requiring legal action." Memorandum in Support of Defendant Office of the Public Defender's Motion to Dismiss ("Memorandum"), p. 6. That is inaccurate. Again, the Consent Order Granting Preliminary Injunctive Relief dealt only with the preliminary injunction. There has been no discovery and no adjudication with respect to the permanent injunctive relief sought in Count II or the mandamus relief sought in Count III of Plaintiff's Complaint.

Moreover, Defendant overstates the posture and impact of the Consent Order Granting Preliminary Injunctive Relief. It is not disputed that once the Consent Order Granting Preliminary Injunctive Relief was entered, Defendant OPD began addressing certain requirements, as it was under court order to do so. In March 2025 within the court-ordered ten-day period, it took certain of the actions required of it under paragraphs 1 through 6 and 8. But with regard to the additional ongoing and prospective requirements of the Consent Order Granting Preliminary Injunctive Relief, those requirements remain pending in the critical stages

9

ahead. Ms. Doe's application for bar admission is pending, including the critical stage of scrutiny by the Character Committee of her period of employment at the Office of the Public Defender. Further, because of Defendants' conduct, Plaintiff has yet to even reach the point of a reference check on an employment application since the March 2024.[3] As such, Defendant's compliance with the Consent Order Granting Preliminary Injunctive Relief is not "full" nor is it complete.

For these reasons, the motion to dismiss Counts II and III should be denied.

3. <u>Count IV</u> <u>States a Claim for Which Relief can be Granted.</u>

The basis for Defendant's argument is not reliably discernible as to dismissal of Plaintiff's claim for violation of her protected liberty interest in her reputation under the Maryland Declaration of Rights.

Defendant states that Plaintiff "may have a liberty interest in her reputation if the basis for her termination damages her reputation or forecloses other employment opportunities (including government opportunities)." Memorandum, pp. 6-7. That is an accurate statement of what Plaintiff has alleged, Complaint ¶¶23-25, and that is the applicable law. In fact, Defendant has already acknowledged the existence of Plaintiff's liberty interest in her reputation and the extent of the threat to her reputation posed by Defendants' communications surrounding her termination when it agreed that the Name Clearing Hearing was due.

In an apparent effort to obscure that admission, Defendant warps the facts regarding the genesis of the Name Clearing Hearing. It writes "Ms. Doe, through counsel, advised the OPD that she sought to conduct a name clearing hearing. The OPD consented to participate . . ." Memorandum, p. 3. That is neither what is alleged, Complaint, ¶¶18-19, nor what occurred. It also is an inaccurate description of the constitutional Name Clearing Hearing process. An

---

[3] There has been no "contemporaneous and ongoing reporting" by Defendant, see Consent Order Granting Preliminary Injunctive Relief ¶7, which serves to confirm these facts.

10

aggrieved employee does not "conduct a name clearing hearing" and invite the employer "to participate." Memorandum, p. 3. Rather, due process law requires *the employer* to conduct a Name Clearing Hearing in circumstances such as these. See *Samuels v. Tschechtelin,* 135 Md. App. 483, 530–31 (2000): "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 371 (1971); *see also Bishop v. Wood,* 426 U.S. 341, 348 (1976); *Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.), *cert. denied,* 474 U.S. 903 (1985). In such a situation, due process requires that *the employer* allow the employee "an opportunity to refute the charge," or "to clear his name." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573 & n. 12 (1972); *see also Codd v. Velger,* 429 U.S. 624, 627 (1977).

Based on that authority, Plaintiff demanded a Name Clearing Hearing because the circumstances of her discharge and the accompanying charges damaged her reputation and imposed upon her a stigma that foreclosed other employment opportunities. Defendant then agreed that Plaintiff was entitled to a Name Clearing Hearing, then proceeded to select the vendor through whom Judge Woodward was retained, and it paid all costs associated with the Name Clearing Hearing.

Defendant appears to claim that Plaintiff did not adequately allege the level of reputational damage needed to make out a liberty interest due process claim. That too has been conceded by their convening the Name Clearing Hearing. Moreover, the facts alleged make clear that Plaintiff suffered the level of reputational damage raising a constitutional claim. Plaintiff alleges that Defendant disseminated to people in her workplace, in other government agencies, and into her law school community that she had committed a crime, that she was dangerous, and that she posed an ongoing potential threat of violence. Plaintiff alleges that she has suffered and continues to

11

suffer extreme damage to her reputation and career as a result of Defendants labeling her a criminal, which jeopardizes her admission to the Maryland Bar or that of any state or federal court and forecloses employment and other opportunities. Compl. ¶23.

Related, Defendant claims that Plaintiff's allegations are "speculative at best" as to lost opportunities. Memorandum, p. 7. While the damages caused by Defendant's actions are continuing in nature and Plaintiff's future in terms of admission to the Maryland Bar, employment as a lawyer, and most importantly, attainment of her career goal to serve as a public defender, is still unfolding because she just graduated and sat for the Bar, that does not render "speculative" the allegation of a threat to her admission and lost career opportunities caused by being labeled a criminal by her only law school employer, the Public Defender's Office no less. Defendant posits that the measures it was ordered to take under the Consent Order "should prevent her foreclosure from economic opportunities." Memorandum, p. 8. It is that which is speculative. In any event, on this motion, accepting as true the well-pled facts and drawing reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently pled a constitutional violation of her liberty interest in her reputation.

In a similar vein, Defendant claims that the steps it has taken to provide the Name Clearing Hearing, agree to the Consent Order, and comply with some of the requirements of the Consent Order "nullified" Plaintiff's claim for damages to her liberty interest in her reputation. Memorandum, p. 7. No law is offered for that proposition. The matter of Plaintiff's pending claims for additional injunctive relief and economic and non-economic compensatory damages for the violation of her constitutional liberty interest is addressed above. Those claims for economic and non-economic compensatory damages go unaddressed and thus unchallenged by Defendant's motion to dismiss. Again, it took the OPD six months to convene the required Name Clearing

Hearing and over a year for it to even start implementing any measures required to clear Plaintiff's name. Throughout that year, Plaintiff's final year of law school, Defendants' baseless falsehoods remained in circulation unabated, effectively paralyzing Plaintiff's her career development and realization in that pivotal year. Throughout that year, Plaintiff's final year of law school, Defendants' baseless falsehoods rendered her unable to answer the inevitable interview question "why are you no longer working at the OPD?" without republishing the defamatory statements of Defendants. The resulting impact to Plaintiff's reputation, career, and emotional well-being is far from over, and her path to recovery remains precarious.

Lastly, Defendant adds that "there is no legislative waiver [of sovereign immunity] applicable here." Memorandum, p. 8. That is inaccurate. No doubt, the Maryland Tort Claims Act ("MTCA") constitutes a waiver of the state's sovereign immunity up to the applicable damages caps. Md. State Gov. Code §12-101 et seq. (2025); *Rodriguez v. Cooper*, 458 Md. 425, 451 (2018). That is also the case with respect to **"constitutional torts"** committed by state personnel within the scope of employment and without malice or gross negligence, *Lee v. Cline*, 384 Md. 245, 256 (2004), such as plausibly pled here by Plaintiff.

The motion to dismiss Counts V should be denied.

## Conclusion

For the reasons set forth herein, Plaintiff urges the Court to deny Defendant Office of the Public Defender's Motion to Dismiss and to grant such additional relief as it deems just.

                          /S/_____
Kathleen Cahill
Federal Bar No. 02006
The Law Offices of Kathleen Cahill
1 Olympic Place
Suite 900
Towson, Maryland 21204
kathleen@kathleencahill-law.com
(410) 321-6171

*Attorney for Plaintiff Jane Doe*