IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | * |
|     *Plaintiff*, | * |
| v. | *   No. 8:25-cv-717 PX |
| | * |
| OFFICE OF THE PUBLIC DEFENDER, ET AL., | * |
|     *Defendants*. | * |

PLAINTIFF'S OPPOSITION TO DEFENDANT NATASHA DARTIGUE'S
MOTION TO DISMISS COMPLAINT

Plaintiff Jane Doe, by her undersigned counsel, hereby opposes Defendant Natasha Dartgue's Motion to Dismiss Complaint. The Motion to Dismiss should be denied.

Procedural Background

Plaintiff Doe filed this Complaint in the Circuit Court for Montgomery County on January 21, 2025. The Complaint states claim for monetary damages and injunctive relief against the Office of the Public Defender (hereinafter "OPD") for violations of her federal and state constitutional rights, and against the Public Defender, Natasha Dartigue, for violations of her federal and state constitutional rights and defamation.

Plaintiff Doe filed her Motion for Preliminary and Permanent Injunctive Relief on February 21, 2025. Thereafter, Defendants removed the case to this Court on March 4, 2025. This Court entered the Consent Order Granting Preliminary Injunctive Relief on March 13, 2025. Defendants have now filed for dismissal of all claims under FRCP 12(b)(6).[1]

---

[1] Defendant Office of the Public Defender filed a separate motion to dismiss, as to which has been filed Plaintiff's Opposition to Defendant Office of the Public Defender's Motion to Dismiss. Any arguments applicable to claims of both Defendants are incorporated here.

Standard on Motion to Dismiss

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.,* 801 F.3d 412, 422 (4th Cir. 2015)).   In assessing a claim's plausibility, this Court, must draw all reasonable inferences in the plaintiff's favor. *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013). A claim is plausible when the complaint alleges facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory and speculative allegations" are insufficient, *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). However, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997).

Introductory Statement Regarding the Complaint

In addressing the sufficiency of the allegations of the Complaint, it is necessary to also consider Complaint Exhibit 1, the Hearing Officer's Decision, which is incorporated into the Complaint. That is particularly important with regard to the Findings of Fact of the Honorable Patrick L. Woodward, retired Judge of the Maryland Court of Special Appeals (now the Appellate Court of Maryland) concerning the conduct of Defendant Dartigue, as explained herein.

Facts Alleged in the Complaint

When the events at issue started, Plaintiff Doe was a second-year law student. Plaintiff has since received her Juris Doctorate in May 2025 and she sat for the Maryland Bar in July 2025. Compl. ¶5.

From May 2023 until March 18, 2024, Plaintiff worked at OPD. Plaintiff initially served as an unpaid intern through the law school. Given her exceptional service, on October 25, 2024, Plaintiff was hired as a paid contractual law clerk for a term extending through June 30, 2024. Compl. ¶6. At all relevant times, Plaintiff was an extraordinarily dedicated and proficient law clerk. Plaintiff earned favorable reviews, she was never disciplined, and she was advised that based on her capabilities and performance she was on track to accomplish her career goal of being hired as a public defender upon completion of law school and admission to the Maryland Bar. Compl. ¶7.

Through her good character and honorable conduct, Plaintiff earned an exemplary reputation for her professionalism and integrity in her law school and in the community. Compl. ¶8. Throughout her tenure at OPD, Plaintiff conducted herself with the utmost propriety, professionalism, and integrity. Compl. ¶9.

With no justification or basis in fact whatsoever, on March 18, 2024, Plaintiff was summarily discharged by OPD over a remote videocall and told she was banned from the premises. Plaintiff sought to learn the basis for the adverse action, but OPD refused to provide any explanation and unequivocally said none would be forthcoming. Plaintiff was deprived of any opportunity to address whatever was the alleged basis of her sudden discharge and banishment. Compl. ¶10.

Shortly before that March 18, 2024 discharge videocall, Defendant Dartique called a Dean at plaintiff's law school and falsely told him that plaintiff was fired for stalking a lawyer and that she posed a potential threat of violence to him and others. Compl. ¶11. Prior to communicating that to the Dean, Defendant Dartique performed no investigation whatsoever. Compl. ¶12.

3

After the phone call from Defendant Dartique, the Dean arranged a meeting with Plaintiff. It was at that meeting that Plaintiff learned that her discharge had been for alleged stalking and being dangerous. Compl. ¶13.

In connection with the discharge of Plaintiff, Defendants disseminated to numerous additional third parties that Plaintiff was dangerous and posed a potential threat of violence. Among others, such false communication were disseminated to the OPD workforce and other state employees and security personnel. Defendants also communicated those baseless falsehoods to courthouse officials and requested that plaintiff be barred from access to courthouse buildings as a dangerous person. Defendants also directed that Plaintiff's photograph be posted in public buildings to be on alert for her as a dangerous person. Defendants also issued communications that led the Maryland Capitol Police to consider issuing a "BOLO" with respect to Plaintiff. Compl. ¶14. Defendant Dartique referred to Plaintiff as "a possible shooter." Compl. ¶16.

Further, once Defendants told the OPD workforce that Plaintiff was fired because she was dangerous, that led to the spread of Defendants' deliberately made falsehoods throughout Plaintiff's law school community. Compl. ¶15.

Prior to disseminating those deliberately made false communications, Defendants performed no investigation whatsoever, no facts existed to even remotely raise such a charge, and Defendants failed to ask Plaintiff a single question with respect to those outrageous, highly stigmatizing accusations. Compl. ¶17.

On May 23, 2024, Plaintiff notified the OPD that because it had violated her liberty interest vouchsafed in the Fourteenth Amendment of the United States Constitution and the Maryland Declaration of Rights, she had a right to a hearing to refute the outrageously false charges and to clear her good name ("the Name Clearing Hearing"). Compl. ¶18.

Defendant OPD agreed that Plaintiff was entitled to a Name Clearing Hearing. Compl. ¶19.

On October 14, 2024, a Name Clearing Hearing was conducted for approximately six hours before Judge Woodward. Judge Woodward was selected as the hearing officer from a vendor panel Defendants chose. At the Name Clearing Hearing, Plaintiff and OPD both had the opportunity to call witnesses, present documentary evidence, and submit legal argument orally and in written briefing. Witnesses testified under oath. Compl. ¶20.[2]

On November 27, 2024, Judge Woodward issued a 15-page Hearing Officer's Decision. Judge Woodward found, among other things, that: (a) all OPD's allegations against Plaintiff were "baseless," (b) that Plaintiff "did not pose any potential threat of violence and Ms. Dartique's statements to the contrary lacked any credible evidentiary foundation," (c) that Plaintiff "never stalked [an attorney] or acted in any way other than professional, respectful, and eager to work with OPD attorneys," and (d) OPD "published false information to third parties damaging to [Plaintiff's] reputation." Compl. ¶21.

Significantly, at the Name Clearing Hearing, Defendant Dartigue denied under oath telling the Dean that Plaintiff was fired for stalking a lawyer. But the Judge found it was the Dean's testimony that Defendant Dartigue told him Plaintiff was fired for stalking a lawyer that was credible, not Defendant Dartigue's denial. Compl. Exhibit 1.

Judge Woodward found as Fact:

"3. <u>Potential Threat of Violence</u>. On Monday March 18, 2024, Ms. Dartigue contacted Dean Paul Manrique of the University of Baltimore School of Lawe to see if he would assist in returning Ms. Doe's personal belongings from her office at the OPD. According to Dean

---

[2] The hearing was also video recorded.

Manrique's testimony, in their telephone conversation Ms. Dartigue disclosed that Ms. Doe was going to be terminated for stalking an OPD attorney. When Dean Manrique inquired about a threat of violence, Ms. Dartigue responded that there was no direct threat of violence a "a concern of potential threat." Ms. Dartigue also told Dean Manrique that Ms. Doe had been banned from all OPD offices and that if she returned to the office, a peace order would be sought. When Ms. Dartigue asked about any history of any similar sort of behavior, Dean Manrique said that Ms. Doe "was a standout student leader at the law school and there had been no concerns about her in the past." *Although Ms. Dartigue testified that she did not share any reason for Ms. Doe's termination with Dean Manrique and that she did not have any information to share with him regarding any threat of violence, the Hearing Officer credits Dean Manrique's testimony on this subject.* Dean Manrigue prepared contemporaneous notes of his conversation on a Compass case Management Submission Form while Ms. Dartigue did not make any notes. There is no way Dean Manrique would have known of allegations of 'stalking' or a potential threat of violence but for his conversations with Ms. Dartigue. Finally, the first time that Ms. Doe learned of the charge of stalking was in a conversation with Dean Manrique a day or two after her termination."
Compl. Exh. 1, Findings of Fact, p. 9 (emphasis added).

In the Hearing Officer's Decision, Judge Woodward concluded that "specific relief must be granted to [Plaintiff] to mitigate the damage caused by the OPD to her reputation," and went on to detail the specific measures that should be undertaken by OPD to clear Plaintiff's name. Compl. ¶21, Exh. 1.

But Defendants steadfastly refused to provide any of the name-clearing measures, leaving in circulation unabated the baseless falsehoods they generated, continuing and compounding the damage to Plaintiff's reputation and career. Compl. ¶¶22, 24.

6

Plaintiff has suffered and continues to suffer extreme damage to her reputation and career as a result of Defendants' acts and omissions. The stigma resulting from Defendants' outrageous falsehoods jeopardizes Plaintiff's admission to the Maryland Bar or that of any state or federal court, and forecloses employment and other opportunities. Compl. ¶23. As a result of Defendants' actions, Plaintiff Doe has suffered economic and non-economic damages, including a loss of pay and benefits, harm to her livelihood and reputation, emotional distress, and other damages to be proven at trial. Compl. ¶25.

Defendant Dartigue's Arguments Fail to Meet the Standard for Dismissal.

Defendant Dartigue's motion to dismiss is replete with assertions of alleged facts beyond the allegations in the Complaint, as to which she has filed no Affidavit, that she deploys to start waging her defense. For Plaintiff, it is concerning that after participating in the Name Clearing Hearing and the Court's entry of the Preliminary Injunction, Defendant uses her motion to dismiss to recirculate allegations that were found "baseless" and "false" by Judge Woodward. Compl. ¶21, Exh. 1 pp. 8-9. (Judge Woodward: "the OPD charge that Ms. Doe possessed unfired nine-millimeter hollow point bullets on OPD property is baseless";  "there is no credible evidence that Ms. Doe 'stalked' Mr. Connell or otherwise engaged in any inappropriate conduct regarding Mr. Connell"; "the charge of stalking against Ms. Doe is baseless";  "Ms. Doe was 'nothing but respectful' . . . 'optimistic, eager, respectful, willing to please, eager to please' and was never 'temperamental or explosive or abusive.'").

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992). It is clear

that Defendant Dartigue's improper arguments cannot earn her preliminary dismissal as a matter of law.

1. <u>Counts I and IV State Constitutional Claims for Which Relief can be Granted.</u>

Defendant Dartigue asserts that Plaintiff's constitutional claims under Counts I and IV should be dismissed "because she did not violate any protected liberty interest, and her actions were at best negligent." Defendant Dartigue's Motion to Dismiss, p. 3. Whether Defendant Dartigue is liable for violating Plaintiff's protected liberty interest is the ultimate question in the case and turns on factual determinations, including the determination regarding Defendant Dartigue's intent. As such, neither of those assertions is a viable basis for preliminary dismissal.

It is inarguable that Plaintiff, as a public employee, had a liberty interest in her reputation. In agreeing that the Name Clearing Hearing was due, Defendants have already conceded the existence of Plaintiff's liberty interest in her reputation, and they have acknowledged the magnitude of the threat to her reputation and economic opportunities posed by their communications accompanying her termination.[3] See *Samuels v. Tschechtelin,* 135 Md. App. 483, 530–31 (2000): "Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential." *Wisconsin v. Constantineau,* 400 U.S. 433, 371 (1971); *see also Bishop v. Wood,* 426 U.S. 341, 348 (1976); *Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.), *cert. denied,* 474 U.S. 903 (1985). Under the circumstances, Defendants acknowledged due process required that they allow Plaintiff "an opportunity to refute the charge," or "to clear [her] name." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 573 & n. 12 (1972); *see also Codd v. Velger,* 429 U.S. 624, 627 (1977).

---

[3] Defendant erroneously states at times that Plaintiff's claims are for violations of a property interest.

8

The procedural history is not subject to dispute: Plaintiff demanded a Name Clearing Hearing, Defendants agreed, Defendants then proceeded to select the vendor through whom Judge Woodward was selected and retained, and they paid all costs associated with the proceeding. Defendant Dartigue attended and testified at the Name Clearing Hearing.

Defendant Dartigue's attempts to recast and minimize her communications accompanying Plaintiff's discharge are inappropriate at the preliminary motions phase and are to no avail. Plaintiff alleges in her Complaint that Defendant disseminated in her OPD workplace, in her law school, and in the legal community that she was a criminal and posed a potential threat of violence. Compl. ¶¶11, 14, 15, and 16. The most brazen of Defendant's alleged conduct -- indeed it was proven as Fact at the Name Clearing Hearing, according to the Judge's findings over Defendant Dartigue's apparent perjurious denial -- is that shortly before Plaintiff's discharge, Defendant Dartigue, a seasoned criminal defense lawyer, called a Dean at plaintiff's law school and told him that Plaintiff was fired for stalking a lawyer, a crime under Maryland law, and that she posed an ongoing potential threat of violence. Compl. ¶11. We submit that that communication alone rises to the level of a communication depriving Plaintiff of a protected liberty interest in her reputation. But there is much more alleged in detail: Defendants proceeded to disseminate those "false" and "baseless" claims throughout the OPD workplace, resulting in the falsehoods reaching Plaintiff's law student community, and to other agencies including the courts, as found by Judge Woodward. Compl. ¶¶14-16, Exh. 1 pp. 10-11.

Plaintiff alleges that she has suffered and continues to suffer extreme damage to her reputation and career as a result of Defendant's outrageous falsehoods, which also jeopardize her admission to the Maryland Bar or that of any state or federal court and foreclose employment and other opportunities. Compl. ¶23. Judge Woodward found of major concern the implications of "the

9

stigmatizing information" during the Bar Admission Character review process, Compl. Exh. 1 p. 12, which process has yet to be navigated by Plaintiff. Considering the facts pled and the reasonable inferences arising therefrom, Plaintiff's states cognizable claims for damages caused by violations of her constitutional rights as to which Defendant Dartigue should be required to respond in discovery.

Defendant Dartigue argues next that her communications to the Dean that Plaintiff was fired for stalking a lawyer and that she posed a potential threat of violence were "negligent at best." Memorandum, p. 3. (It is unclear whether Defendant Dartigue is now acknowledging to this Court that she did tell the Dean that Plaintiff was fired for stalking a lawyer and that she posed a potential threat of violence.) Regardless, the issue of her intent is matter for the factfinder and not a matter to be determined on preliminary motion. See *Republican Party of N. Carolina v. Martin,* 980 F.2d at 952.

Plaintiff has pled with sufficient detail plausible claims for violations of her federal and state constitutional rights such that the motion to dismiss Counts I and IV should be denied.

2. <u>Count V States a Claim for Defamation as to Which Relief can be Granted.</u>

Defendant argues that Plaintiff's defamation claim should be dismissed because Plaintiff relies on "bald" and conclusory allegations regarding her intent and her acting outside the scope of her employment, and also based on the common interest privilege. Defendant adds that she in entitled to dismissal under the theory that when she told the Dean that Plaintiff Doe was a "potential threat," that statement was true. Motion to Dismiss, p. 13. Again, this stage of the proceedings is "not [for] resolv[ing] contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.*

10

Conclusory allegations are those that express a factual inference without stating the underlying facts on which the inference is based. Black's Law Dictionary (12th ed. 2024). But here, Plaintiff states her defamation claims against Defendant Dartigue with specificity as to the underlying facts. Plaintiff claims, and Judge Woodward found as Fact based upon hours of sworn testimony and exhibits, that Defendant publicized false information to third parties that she had stalked a lawyer, a crime under Maryland law, and that she posed a potential threat of violence. Compl. ¶ ¶12, 14-16, & Ex. 1, pp. 9-11. In addition to the allegations stated in the body of the Complaint, Judge Woodward laid out in great detail all the Facts he found regarding those false publications extending to numerous third parties in her workplace, at her law school, in other governmental agencies, including courts administration. See Compl. Ex. 1, pp. 10-11,

The elements of a prima facie case of defamation are: "(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm." *Offen v. Brenner,* 402 Md. 191, 198 (2007) (citing *Smith v. Danielczyk,* 400 Md. 98, 115 (2007)).

A defamatory statement is one "which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person." *Id.* at 198–99 (quoting *Gohari v. Darvish,* 363 Md. 42, 55 (2001)). Statements disparaging an employee's fitness for their job are defamation *per se:*

> A statement "that adversely affects [an employee's] fitness for the proper conduct of his business ... [is] actionable *per se* at common law." This is not to imply, however, that every negative evaluation of an employee's performance is potentially defamatory. Rather, "'[t]he words must go so far as to impute to him some incapacity or lack of due qualification to fill the position.'" In other words, the defamatory statement must be such that "if true, would disqualify him or render him less fit properly to fulfill the duties incident to the special character assumed."

11

*Samuels v. Tschechtelin,* 135 Md. App. 483, 550 (2000) (quoting *Leese v. Baltimore County*, 64 Md. App. 422, 474 (1985)). Plaintiff's allegations are very specific and make out claims for defamation *per se*: Defendant labeled Plaintiff as dangerous and spread that she had engaged in criminal conduct in the workplace. Taken as true for purposes of this motion, those allegations are more than sufficient to meet each element of a defamation claim.

Defendant raises the common interest privilege, but a conditional privilege rarely can dispose of a claim on motion to dismiss because it turns on fact-based determinations as to the existence, the scope, and any applicable exceptions. "The common interest privilege is one of the four qualified or conditional privileges to defamation that 'is conditioned upon the absence of malice and is forfeited if it is abused.'" *Shirley v. Heckman,* 214 Md. App. 34, 42–43 (2013) (quoting *Piscatelli v. Van Smith,* 424 Md. 294, 307 (2012)). A qualified privilege may exist when "the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto." *Woodruff v. Trepel,* 125 Md. App. 381, 401–02 (1999) (quoting *McDermott,* 317 Md. at 28). Whether a qualified privilege exists is "a question of law for the judge, and the burden of proof is upon the defendant." *Id.* at 402 (quoting *Simon v. Robinson,* 221 Md. 200, 205 (1959)).

Even where it exists, "[a] conditional privilege may be lost, however, if the plaintiff can prove the defamatory publication was made for a purpose other than furthering the applicable societal interest, or that the publisher made the statement with malice." *Woodruff,* 125 Md. App. at 401–02 (quoting *McDermott,* 317 Md. at 29). Then, "[o]nce a judge determines that a privilege exists, the question of whether the privilege was abused is for the jury, subject to the censorial power of the judge where there is no evidence of malice, and the burden on the issue is on the plaintiff." *Id.* at 401 (citing *Simon,* 221 Md. at 205–06); *see also McDermott,* 317 Md. at 30

("[R]esolution of whether the privilege has been abused and whether malice exists is ordinarily a jury question."). It is well-established that "[t]he granting of a motion to dismiss on the basis of an asserted conditional privilege, however, is not appropriate where the complaint alleges facts that would support an abuse of that privilege." *Woodruff,* 125 Md. App. at 403 (citing *Leese,* 64 Md. App. at 476).

It is an unfathomable stretch that the allegations of the Complaint raise an inference that Defendant Dartigue shared with the law school Dean a common interest "in property, business and professional dealings"; that her statements to the Dean that Plaintiff was fired for stalking a lawyer and that she posed a potential threat of violence were in furtherance of their common interest "in property, business and professional dealings"; and that her "otherwise actionable defamatory statement . . . advances social policies of greater interest than plaintiff's reputational interest." Motion to Dismiss, pp. 11-12 (citations omitted). As Plaintiff alleges, Defendant Dartigue herself testified under oath at the Name Clearing Hearing that she "contacted Dean Paul Marique of the University of Baltimore School of Law to see if he would assist in returning Ms. Doe's personal belongings from her office at the OPD." Compl. Exh. 1. p. 9.[4] Here, the facts pled and the related reasonable inferences show no basis for a finding that Defendant's and the Dean's interests were remotely aligned. If anything, this might be an issue for the factfinder at a later stage of the proceedings. But Defendant Dartigue cannot earn dismissal at this stage on the basis of the claimed conditional privilege.

Lastly, Defendant claims Plaintiff cannot prove the requisite intent element as to her communications and that her statements were not false in any event. Again, a motion to dismiss is

---

[4] As the evidence will show, the Dean testified that he refused to act as an intermediary for Plaintiff's belongings because he was "uncomfortable," and that he found Defendant Dartigue's call to be "unusual," "odd," "confusing," and "very uncomfortable."

13

not the proper stage for resolving "contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992).

Plaintiff alleges that "[i]n making those false statements, Defendant Dartigue acted outside the scope of her employment, and with malice or gross negligence." Compl. ¶55. Those allegations directly track Maryland defamation law. *Samuels v. Tschechtelin,* 135 Md. App. at 544 (quoting *Shapiro v. Massengill,* 105 Md. App. 743, 772 (1995)). ("[A]ctual malice 'is established when the plaintiff shows, by clear and convincing evidence, that the defendant published the statement in issue either with reckless disregard for its truth or with actual knowledge of its falsity.'") Malice may be inferred from the surrounding circumstances. *E.g., Green v. Brooks,* 125 Md. App. 349, 377 (1999); *Leese,* 64 Md. App. at 480; *Henderson v. Maryland Nat'l Bank,* 278 Md. 514, 523 (1976). Reckless disregard for the truth has been equated with "subjective awareness of probable falsity" of a statement. *Jacron Sales Co. v. Sindorf,* 276 Md. 580, 585 n.3 (1976) (quoting *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968)). It can be fairly inferred from the facts alleged that Defendant Dartigue, at a minimum, published the statements at issue "with reckless disregard for the truth."

As for Defendant's challenge to Plaintiff's allegation that "[i]n making those false statements, Defendant Dartigue acted outside the scope of her employment," Compl. ¶55, the Public Defender system was founded pursuant to Maryland's "policy to: (1) provide for the realization of the constitutional guarantees of counsel in the representation of indigent individuals, including related necessary services and facilities, in criminal and juvenile proceedings in the State; and (2) assure the effective assistance and continuity of counsel to indigent accused individuals taken into custody and indigent individuals in criminal and juvenile

proceedings before the courts of the State." Md. Code Ann., Crim. Proc. § 16-201 (2019). The Office of the Public Defender is headed by the appointed Public Defender whose "primary duty is to provide representation for indigent individuals in accordance with" State law. Md. Code Ann., Crim. Proc. § 16-207 (2008). The OPD'S website displays its central Mission and Values as "Justice Fairness and Dignity for All" and represents that "[w]e are the statewide advocates for securing justice, protecting civil rights, and preserving liberty."
https://opd.state.md.us/mission-and-values

    Plaintiff has pled and Judge Woodward found as Fact that Defendant Dartigue placed a phone call to the Dean, whom she did not know, and told him that Plaintiff, whom she had never met, had engaged in criminal conduct in the workplace and was dangerous. Defendant Dartigue disseminated those communications without conducting or directing to be conducted any investigation whatsoever, without having asked Plaintiff a single question, and without Plaintiff being given an opportunity to even hear the charges much less respond. The conduct alleged by Defendant Dartigue is wholly inconsistent with the statutory policy of the Public Defender system and outside the scope of the statutorily proscribed duties of Public Defender Dartigue, whose "primary duty is to provide representation for indigent individuals in accordance with" the constitution and law. Thus, accepting as true the well-pled facts and drawing reasonable inferences in Plaintiff's favor, Plaintiff has sufficiently pled a viable claim against Defendant Dartigue for defamation.

    With respect to Defendant's claim that what she said about Plaintiff is "true," that is a defense that is wholly fact-based and not properly raised on preliminary motion. See *Republican Party of N. Carolina v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992).

15

In the event the Court views the Complaint as insufficiently pleading elements of her defamation claim, Plaintiffs seek leave to amend.

## Conclusion

For the reasons set forth herein, Plaintiff urges the Court to deny Defendant Natasha Dartigue's Motion to Dismiss the Complaint, or in the alternative, defer ruling under FRCP 12(d) while Plaintiff conducts discovery on the factual issues raised by Defendant, and to grant such additional relief as it deems just.

\_\_\_\_/S/_____
Kathleen Cahill
Federal Bar No. 02006
The Law Offices of Kathleen Cahill
1 Olympic Place
Suite 900
Towson, Maryland 21204
kathleen@kathleencahill-law.com
(410) 321-6171

*Attorney for Plaintiff Jane Doe*