IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE DOE, | : | |
| Plaintiff, | : | |
| v. | : | Case No. 8:25-cv-00717-PX |
| OFFICE OF THE PUBLIC DEFENDER, et al., | : | |
| Defendants. | : | |

**DEFENDANT NATASHA DARTIGUE'S REPLY TO
OPPOSITION MOTION TO DISMISS COMPLAINT**

Defendant Natasha Dartigue, by and through her counsel submits this Reply to Plaintiff's Opposition to her Motion to Dismiss and states[1]:

**I.      Introduction.**

Instead of addressing the legal arguments raised by Ms. Dartigue in her Motion to Dismiss, much of the Plaintiff's Opposition consists of a regurgitation of the Complaint allegations, which improperly merge the two Defendants as if they are one. (ECF 29 (hereinafter "Opp.") at 8) Ms. Doe asserts that '[i]n agreeing that the Name Clearing Hearing was due, Defendants have already conceded the existence of [Ms. Doe's] liberty interest in her reputation…" (*id.*) and that the Hearing Officer's "findings of fact" related to the actions of the OPD are binding on Ms. Dartigue- they are not. (Opp. at 7) Indeed, the focus in the opposition is entirely on information presented long *after* the OPD terminated Ms. Doe, rather than the critical time when the decision was made.

In her Opposition, as in her Complaint, Ms. Doe continues to make bald and inflammatory allegations without responding to the legal arguments advanced by the Defendants. In doing so, Ms. Doe disregards the case law presented as to both the constitutional claims and the defamation

---

[1] To the extent the OPD raises additional arguments in its Reply that apply to Ms. Dartigue, Ms. Dartigue adopts and incorporates those arguments here.

1

claim, instead citing to authority that is either distinguishable or inapplicable. While she asserts that Ms. Dartigue's Motion to Dismiss is "replete with assertions of alleged facts beyond the allegations in the Complaint" (Opp. at 7), she fails to identify which "alleged facts" were not part of the Complaint.[2] As the Plaintiff herself points out, the Hearing Officer's report and findings were attached to her Complaint as Exhibit 1. (Opp. at 5)  There is nothing in Ms. Dartigue's Motion to Dismiss that is not part of the Complaint or Exhibit 1 attached thereto.

In summary, Ms. Doe fails to effectively address any of the legal arguments advanced by Ms. Dartigue and dismissal is appropriate.

**I.      Argument.**

**A.     *The conclusions reached at the Name Clearing Hearing are not binding on Ms. Dartigue*.**

As a preliminary matter, the Hearing Officer's findings at the October 14, 2024 "Name Clearing Hearing" between the OPD and Ms. Doe are not binding against Ms. Dartigue in this action. Nevertheless, in opposing the motion, Ms. Doe relies heavily on the Hearing Officer's decision, suggesting they are conclusively established against Ms. Dartigue. (Opp. at 2, 5-7, 9) She does so even though the federal rules of evidence (including most notably inadmissible hearsay) were not followed and Ms. Dartigue was not a party to the name clearing hearing.

A name clearing hearing is designed to provide an individual with an opportunity to refute charges that may have harmed their reputation. There is no specific standard by which a name clearing hearing is to be conducted. *Lyons v. Barrett*, 851 F.2d 406, 411 (D.C. Cir. 1988)  Such hearings "need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Quinn v. Shirey*, 293 F.3d 315, 321 (6th Cir. 2002)(quoting *Ludwig v. Bd.*

---

[2] Ms. Doe confuses the standard for a motion to dismiss with that of summary judgment by suggesting that Ms. Dartigue was required to submit an affidavit in support of her motion.

*of Trs. of Ferris State Univ.*, 123 F.3d 404 (6th Cir. 1997). As the D.C federal appeals court held in *Lyons, supra*:

> Name-clearing hearings are different from most hearings conducted by an agency. Unlike most hearings, they do not address the correctness of a particular course of action. They have no effect on the underlying decision to terminate an employee. *Doe* [*v. U.S. Dept. of Justice*]*,* 753 F.2d 1092[, 1113] n. 25 (decision ordering Department of Justice to grant a name-clearing hearing "does not in any way affect actual government personnel decisions ..."). They simply permit a dismissed employee to "clear his name."

*Lyons*, 851 F.2d at 41. (Cleaned up.)

Since the purpose of the name-hearing was only to clear Ms. Doe's name, was only between Ms. Doe and the OPD, and the formal rules of evidence were not followed, any findings of fact by the Hearing Officer are not dispositive or binding on Ms. Dartigue, and reliance by Ms. Doe on any such findings is misplaced.[3]

### B. The Plaintiff does not address Ms. Dartigue's legal authority or arguments challenging the constitutional claims.

The Plaintiff's liberty interest of which she claims she was deprived is her reputation. (Opp. at 8) She cites to three cases to support her claim that Ms. Dartigue violated her constitutional rights: *Samuels v. Tschechtelin*, 135 Md.App. 483, 763 A.2d 209 (2000) (a case also cited by both defendants); *Bishop v. Wood*, 426 U.S. 341 (1976); and *Beckham v. Harris*, 756 F.2d 1032 (4th Cir.) *cert. denied*, 474 U.S. 903 (1985). These cases do not support Ms. Doe's claim. Instead, each merely holds that a discharged employee is entitled to notice and an opportunity to be heard – in other words, a name clearing hearing. Because Ms. Doe had her name clearing hearing, they are neither persuasive nor relevant. ("Plaintiff demanded a Name Clearing Hearing, Defendants agreed.") (Opp. at 9)

---

[3] We could find no case in which conclusions reached at a name clearing hearing were binding (on any party) in a later court action.

The Plaintiff further argues that Ms. Dartigue's comments to the Dean that she was fired for stalking a lawyer and that she posed a potential threat of violence are sufficient to state a claim for a constitutional violation. She is wrong and disregards existing case law cited by Ms. Dartigue to the contrary. Ms. Dartigue cited to several cases on this very point, including *Walker v. City of Salisbury*, 170 F. Supp. 2d 541, 547 (D. Md. 2001) where this Court dismissed constitutional claims based on allegations of dishonesty and "double-dipping" even after the City of Salisbury refused to give the Plaintiff a name clearing hearing. There is no mention of this case in Plaintiff's opposition. Similarly, Ms. Doe ignores cited authority holding that alleged defamatory statements do not rise to the level of a constitutional deprivation including *Paul v. Davis*, 424 U.S. 693 (1976), *Carroll v. City of Westminster*, 52 F.Supp.2d 546, 562 (D.Md.1999), and *Bunting v. City of Columbia*, 639 F.2d 1090 (4th Cir. 1981). Each of these cases remain unanswered. Instead of addressing this authority, Ms. Doe recites her Complaint (asserting bald allegations) or relies on non-binding conclusions by the Hearing Officer as a basis to allow her claims to continue.

Although this Court need not reach Ms. Dartigue's second argument – that her actions were at best negligent – Ms. Doe does not address this argument and instead posits that *intent* is a matter for the factfinder. Plaintiff relies on *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) for this proposition. As an initial matter, the pin cite in Ms. Doe's opposition is incorrect. But regardless, *Martin* does not support the Plaintiff's claim. Indeed, "the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). The Plaintiff's complaint is devoid of any allegations that support the requisite intent.

4

But more importantly, in order to state a claim, the Plaintiff must allege facts showing either malice or gross negligence. With regard to malice[4], and as an initial matter, the Plaintiff did not plead malice (or gross negligence) as part of her constitutional claims. But even if she had, she cannot ignore her own alleged fact that Ms. Dartigue never met Ms. Doe. (Compl. ¶12.) This alone is incompatible with any suggestion of malicious conduct. The only allegation in the Complaint mentioning malice or gross negligence is found at paragraph 55 (relating to the Count V, the defamation claim) and is the type of bald and conclusory allegation prohibited by our Courts:

> 55. In making those false statements, Defendant Dartique acted outside the scope of her employment, and with malice or gross negligence.

As the Supreme Court held in *Ashcroft v. Iqbal*, 556 U.S. 662, 681, 129 S. Ct. 1937, 1951, 173 L. Ed. 2d 868 (2009):

> These bare assertions, much like the pleading of conspiracy in *Twombly,* amount to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim, namely, that petitioners adopted a policy " 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group[.]" As such, the allegations are conclusory and not entitled to be assumed true.

*Ashcroft*, 556 U.S. at 681. (Cleaned up.)

With regard to gross negligence, Maryland courts have found that a wrongdoer is guilty of gross negligence or wanton or willful conduct "only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist*" Barbre v. Pope*, 402 Md. 157, 187 (2007) (quoting *Liscombe v. Potomac Edison Co.,* 303 Md. 619, 635 (1985)). Although it is not clear which of Ms. Doe's allegations (if any) assert gross negligence, it is plausible that her contention that Ms. Dartigue "performed no investigation whatsoever[]" (Opp.

---

[4] See Dartigue's Motion to Dismiss (ECF 26) at p. 10 for a definition of malice.

at 3; Compl. at 12) prior to speaking with the Dean is the basis for her claim. Assuming this to be the case, and even if this allegation rose to the level of the willful or wanton conduct required, this assertion is inconsistent with other facts incorporated into Ms. Doe's Complaint through Exhibit 1 (Hearing Officer's decision) describing the investigative steps taken:

- After discovering bullets in Ms. Doe's desk, Ms. Doe's supervisor, Ms. Meckler called the OPD Human Resources Director, Ms. Kouneski; Ms. Meckler went to Ms. Doe's office and placed the bullets in a bag in her office. (Compl. Ex. 1, at 4);

- After Ms. Meckler removed the bullets, she called Ms. Rowland (the OPD attorney who previously occupied the desk) and "asked whether she ever had bullets in her desk, to which Ms. Rowland laughed and said, "no[.]" (*Id*. at 6)

- Thereafter a meeting was held attended by Ms. Meckler, Ms. Kouneski, Ms. Lanaux, and Ms. Dartigue. (*Id*. at 4) "Because of the allegations of "stalking," the presence of bullets in [Ms. Doe's] desk, and a concern for the safety of Mr. Connell and the other employees of OPD, Ms. Dartigue decided to terminate [Ms. Doe's] contract of employment. (*Id*.)

Maryland courts have held that "any ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." *Continental Masonry v. Verdel Constr.,* 279 Md. 476, 369 A.2d 566 (1977)(citing *Ronald M. Sharrow, Chartered v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754 (1986)). Ms. Doe's allegation that there was no investigation cannot be credited, as it is contradicted by the factual allegations incorporated into her Complaint.

**C. The defamation claim fails because the Plaintiff provides no support for her bald assertion that Ms. Dartigue acted outside the scope of her employment.**

Ms. Doe asserts that Ms. Dartigue is not entitled to statutory immunity because she was acting outside of her employment, but offers no substantive evidence supporting this theory. She claims that Ms. Dartigue was acting outside of her authority because (1) the statements made to the Dean were "wholly inconsistent with the statutory policy of the Public Defender system and

6

outside of Ms. Dartigue's statutorily proscribed duties..." and (2) because the Public Defender system was founded pursuant to Maryland's policy to provide for the effective assistance of counsel to the indigent. (Opp. at 14-15)  She offers no legal support for this argument. Indeed, the Office of the Public Defender's website states that the "Public Defender directs the operation of the Office of the Public Defender and its district offices." https://msa.maryland.gov/msa/mdmanual/25ind/html/61pubdf.html. This court can take judicial notice[5] that the Public Defender, as head of the office,  does far more than provide legal services, and communications to the Dean about one its student interns through the school's internship program is certainly within the scope of those duties.

In *Larsen v. Chinwuba*, 377 Md. 92 (2003), the Maryland Supreme Court found that the Maryland Insurance Commissioner was immune from claims of defamation and invasion of privacy because his actions were within the scope of his public duties under the Maryland Tort Claims Act.  In that case, the Commissioner was authorized to investigate the solvency of a Maryland health maintenance organization. During the investigation, the Commissioner publicly released two letters written to the organization. The first letter, in part, stated that there were "grave concerns covering a number of critical areas relating to [the organization's] ongoing ability to maintain licensure,' and outlined those concerns." *Id*. at 97. The second letter included a proposed report which stated, in part, that the organization's certifications were false and misleading. In finding that the Commissioner was immune, the *Larsen* court stated:

> Section 5–522(b)'s phrase, 'within the scope of the public duties of the State personnel,' for purposes of a State official's or employee's immunity from suit under the Maryland Tort Claims Act, generally 'is coextensive with the common law concept of 'scope of employment' under the doctrine of respondeat superior...'

---

[5] Rule 201 allows court to take judicial notice of a fact not subject to reasonable dispute including facts that are generally known within the trial court's territorial jurisdiction or otherwise can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

*Id*. at 105 (quoting *Sawyer v. Humphries,* 322 Md. 247, 254 (1991)). In cases of intentional torts, the *Sawyer* court stated:

> …particularly in cases involving intentional torts committed by an employee, this Court has emphasized that where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

*Id*. at 256-57. Here, it is undeniable that Ms. Dartigue was acting within the scope of her employment when she contacted the Dean and Ms. Doe has failed to refute this. Dismissal is appropriate based on immunity.

### D. The common interest privilege applies.

With regard to the common interest privilege, the Plaintiff asserts that it "rarely can dispose of a claim on a motion to dismiss because it turns on fact-based determinations as to the existence, the scope, and any applicable exceptions. (Opp. at 12) Relying on *Woodruff v. Trepel*, 125 Md. App. 381, 403 (1999), Ms. Doe argues that the granting of a motion to dismiss is not appropriate where the facts alleged support an abuse of that privilege. (Opp. at 13) Here, however, the Plaintiff has failed to allege any of the required malice necessary to demonstrate an abuse of that privilege. Looking at the facts in the light most favorable to Ms. Doe, merely reporting that a student's employment was terminated for stalking and that she was a *potential* threat is precisely the type of information *that should be shared*.

In *Lindenmuth v. McCreer*, 233 Md. App. 343 (2017), the plaintiff's coworker expressed concern to the defendant, who was the plaintiff's supervisor, that the plaintiff was "going to shoot someone at work upon his return." *Id. at* 350. Subsequently, the defendant relayed these concerns to his manager. *Id*. at 351. The court determined that the defendant was protected by the common interest qualified privilege against a defamation claim raised by the plaintiff. *Id*. at 363. The

*Lindenmuth* court noted that, "[o]n numerous occasions the Court of Appeals has articulated the Court's preference for a 'stringent standard of malice' to defeat a qualified privilege, requiring a plaintiff to show that the defendant acted with a 'reckless disregard as to truth or falsity' of the statement." *Id*. at 360 (citing *Marchesi v. Franchino*, 283 Md. 131 (1978)). The Court held that it is insufficient to show that the alleged defamatory statement:

> was erroneous, derogatory or untrue; the publisher acted out of ill will, hatred or a desire to injure ...; the publisher acted negligently; the publisher acted in reliance on the unverified statement of a third party without personal knowledge of the subject matter of the defamatory subject; or the publisher acted without undertaking the investigation that would have been made by a reasonably prudent person.... Malice is not established if there is evidence to show that the publisher acted on a reasonable belief that the defamatory material was 'substantially correct' and 'there was no evidence to impeach the [publisher's] good faith.'

*Id*. (quoting *Bagwell v. Peninsula Reg'l Med. Ctr*., 106 Md. App. 470, 513 (1995)). The *Lindenmuth* court explained that, "[e]ven concrete evidence that [the defendant] harbored ill will or hatred toward [the plaintiff] would not have established an abuse of privilege where [the defendant] could not proffer any evidence to impugn [the plaintiff's] good faith belief in the accuracy of his statements. *Id*. at 364.

The Complaint and Exhibit 1 make clear that the concerns about Ms. Doe transmitted to Ms. Dartigue by the OPD were highly troublesome and based on real information. OPD attorney Matt Connell reported that Ms. Doe "stalks him as she seems to know when he gets off the elevator and then follows him to his office to talk to him and try to get him to work with her." (Compl., Ex. 1 at 3)  "He is uncomfortable around her and does not trust her." (*Id*.)  Two weeks later, Mr. Connell found "three unfired hollow point bullets in one of the drawers" of Ms. Doe's desk. (*Id*. at 4) A supervisor confirmed the existence of the bullets and removed them. (*Id*.)  The OPD contacted Maureen Rowland, the OPD attorney, who had occupied the desk immediately before Ms. Doe. (*Id*. at 5)  Ms. Rowland denied ever having bullets in her desk. (*Id*. at 6)  At the name

9

clearing hearing many months later, she changed her testimony explaining that her earlier denial was a "knee jerk reaction." *Id*.

In summary, in March 2024, the information Ms. Dartigue and the OPD had was that unaccounted for bullets were found in Ms. Doe's desk, and an attorney in the OPD's office felt that he was being stalked by her. The fact that the Hearing Officer later believed that Ms. Doe was not dangerous does not change the legitimate concerns of the OPD and Ms. Dartigue – concerns that appropriately were shared under the common interest privilege. If Ms. Dartigue had done nothing and Ms. Doe harmed someone, there is no doubt she would be blamed for not acting and remaining silent. Under these facts, there is no evidence that Ms. Dartigue abused this privilege, even accepting Plaintiff's claims as plead.

Because Ms. Doe provides no pertinent facts to support an abuse of the privilege, and dismissal is appropriate.

### E. Leave to amend should be denied.

Ms. Doe asks the Court to allow her leave to amend the defamation claim if the court finds that she has insufficiently plead her claim. This generalized suggestion of more factual detail is not a proffer and will not cure the *legal* failures, including Ms. Dartigue's statutory immunity, common law privilege, and the fact that the statements were true. This Court should deny the request for leave to amend and dismiss Count V with prejudice. *Lavin v. Safeco Ins. Co. of Am.*, 2022 WL 17342051, at *2 (D. Md. Nov. 30, 2022) ("There is no question, to be sure, that leave to amend would be futile when an amended complaint could not survive a Rule 12(b)(6) motion.")

### II. Conclusion.

For the foregoing reasons, together with those previously stated in the Motion to Dismiss, this Court should dismiss the Plaintiff's Complaint with prejudice.

        Respectfully submitted,

        MILLER, MILLER & CANBY

        *Donna E. McBride*
        Donna E. McBride, Fed. Bar No. 14148
        dmcbride@mmcanby.com
        200-B Monroe St.
        Rockville, MD 20850
        (301) 762-5212
        (301) 762-6044 (fax)
        *Counsel for Defendant Natasha Dartigue*

## CERTIFICATE OF SERVICE

    I hereby certify that on this 12th day of September, 2025, a copy of the foregoing was served via CM/ECF on counsel of record for Plaintiff Jane Doe and co-Defendant, the Office of the Public Defender.

        */s/ Donna E. McBride*
        Donna E. McBride